583 F.2d 579
 John WISENER, Plaintiff-Appellant,
v.
AIR EXPRESS INTERNATIONAL CORPORATION, Defendant-Appellee.
NOVO CORPORATION, Plaintiff,
v.
ARTHUR ANDERSEN & CO., Defendant.
ARTHUR ANDERSEN & CO., Defendant and Third-Party Plaintiff,
v.
Albert F. BEITEL, etc., et al., Third-Party Defendants.
 No. 380, Docket 77-7272.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 9, 1977.
Decided June 15, 1978.
Rehearing Denied Nov. 1, 1978.
 
 David W. Cohen, New York City (Freeman, Meade, Wasserman & Schneider, New York City, W. Lawrence Joachim, New York City, of counsel), for plaintiff-appellant.
 Joseph L. Forstadt, New York City (Stroock & Stroock & Lavan, New York City, William J. Robbins, New York City, of counsel), for defendant-appellee.
 Before FRIENDLY, SMITH and MESKILL, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Two actions based on claimed violations of federal securities acts in connection with an aborted merger of two air express companies, Novo and Air Express International ("AEI"), brought in the United States District Court for the Southern District of New York were settled and dismissed except for cross-claims in each action by Wisener, former officer and director of AEI, for indemnification from AEI for his legal fees and expenses incurred in defending himself in the litigation. The cross-claims were consolidated for trial and tried to the court. The court, Lee P. Gagliardi, Judge, dismissed the cross-claims, holding an amended corporate by-law on indemnification inapplicable. We find error in the ruling as to the amended by-law and reverse and remand.
 
 
 2
 Wings & Wheels, Inc., primarily a domestic air freight forwarding corporation with total annual billings of some $7,000,000, in September, 1967 acquired Air Express International, an air freight forwarder operating primarily internationally with total annual billings of some $18,000,000. The combined corporation was thereafter known as Air Express International.
 
 
 3
 Following the death, on November 4, 1968, of Richter, founder of Wings & Wheels, Inc. and principal shareholder of AEI, Wisener, who had been hired by Richter as vice president of the corporation and general manager of the international operations, became president, director and chairman of the board of AEI. Negotiations were undertaken to dispose of the AEI stock, some 31%, held by the Richter estate to Novo Corporation, another air freight forwarder. Novo, relying on AEI's latest full-year financial figures audited by Arthur Andersen & Co. and on unaudited interim figures of AEI of May 12, 1970 for the period subsequent to these audited figures, contracted to purchase not only the Richter stock but also two other large blocks, and to merge the corporations on August 21, 1970. The unaudited figures turned out to be seriously in error, subsequent adjustments reducing an apparent nine-month gain of $1,200,000 by some $800,000. The merger agreement was terminated by mutual consent. Securities Acts and fraud actions, cross-actions and third-party actions among Novo, AEI, AEI officers and directors, the Richter estate, Andersen and Wisener were settled and withdrawn with the exception of the pending third-party claim by Wisener for indemnification from AEI for his litigation expenses. The court denied relief to Wisener on the ground that under state law then prevailing and the corporate by-laws then effective negligence was a bar to recovery. It found negligence on Wisener's part for permitting Novo to rely on the interim figures when he knew or should have known from Andersen's so-called "blue back" reports with its audits of serious deficiencies in AEI's accounting system and when he had warnings from AEI's staff that serious discrepancies were surfacing just prior to the merger agreement. Wisener contended that there was no lack of due care on his part, pointing to the effective functioning of the manual accounting system under Richter, the mushrooming of business after the acquisition of AEI by Wings & Wheels from $25,000,000 to some $39,000,000 annually, steps taken toward a data processing system and the tentative nature of the data indicating possible discrepancies.
 
 
 4
 While under these circumstances the issue of Wisener's negligence is by no means free from doubt, we find no sufficient reason to disturb the court's conclusion that ordinary care would require notice to the parties of the possible discrepancies before AEI warranted the interim figures as correct. The bookkeeping difficulties of the expansion period may be a sufficient explanation to negate any active fraud or deception, but they were circumstances known to Wisener, and may well be held to require more caution in reacting to the surfacing discrepancies before permitting the parties so seriously to commit themselves on the basis of the unaudited figures.
 
 
 5
 This is not, however, the end of Wisener's claim. There is little doubt that a corporation may commit itself to indemnify its officers and directors for litigation expenses incurred in defending against liability for actions taken in carrying out corporate responsibilities, even though negligent, if the corporation finds it in the corporate interest to undertake such a commitment. See generally, Bishop, Indemnification of Corporate Directors, Officers and Employees, 20 The Business Lawyer 833 (1965). Benefit to a corporation comes from inducing valuable executives to serve it by promising them protection against unjustified litigation. Id. at 839.
 
 
 6
 AEI is an Illinois corporation and the court held and the parties agree that Illinois law is applicable.
 
 
 7
 At the time of the issuance of the interim financial statement, May 12, 1970, and the signing of the merger agreement, August 21, 1970, the corporate by-laws[1] provided for indemnification unless there was reasonable ground to adjudge the officer liable for negligence or misconduct.
 
 
 8
 On November 12, 1970 the by-law was amended "to provide the broadest possible indemnification . . . permitted under the laws of the State of Illinois."
 
 
 9
 The court held that the amended by-law could not be applied in the absence of clearer indications of an intent to make it applicable retroactively, particularly in view of the public policy (as it then appeared to the court) of the State of Illinois, which lacked an indemnification statute. We think, however, that both the plain wording of the by-law and the circumstances under which it was adopted require a finding that the board intended it to apply to the then threatened litigation, and that a subsequent Illinois statute has removed any public policy underpinning of the holding. Following the decision below of May 4, 1977, Illinois, on October 1, 1977, continuing a long-time trend in many of the states,[2] modified its statutes to include a broad indemnification provision.[3] An appellate court will in most instances, absent manifest injustice, apply the law in effect at the time it renders its decision. Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Ziffrin, Inc. v. United States,318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943); Hospital Association of New York State v. Toia, 577 F.2d 790, 796 (2d Cir. 1978).
 
 
 10
 In light of the presently applicable Illinois statute (see n. 3), we conclude that the public policy of the State of Illinois favors, rather than disfavors, corporate indemnification of corporate officers situated as Wisener was in the instant case. It provides that "to the extent that a director, officer, employee or agent of a corporation has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding (against him or her by reason of being or having been a director, officer, employee or agent), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith." Thus, it may be said that a legislative judgment has been made that such protection is necessary or desirable to encourage recruitment of capable management,[4] and that corporate assumption of officers' liabilities for the cost of defense of suits based on decisions and actions, taken in the corporate interest, should properly be permitted and indeed required when the litigation has terminated successfully for the officer. In view of the broad national trend in this direction, this can hardly be held irrational or not within the powers of the legislature over its corporate creatures.
 
 
 11
 It is contended that Wisener was not "successful" in the litigation, since the third-party claims against him never proceeded to trial. The statute, however, refers to success "on the merits or otherwise," which surely is broad enough to cover a termination of claims by agreement without any payment or assumption of liability.
 
 
 12
 We see no manifest injustice in application of the statute here. Necessity of such protection for present as well as future officers had been made plain. The board was faced with the prospect of litigation over matters in which Wisener had acted on behalf of the corporation. His cooperation in the conduct of the litigation was necessary. He was faced with the likelihood of incurring substantial litigation expense, a likelihood which later became a reality when in 1973 and 1975 he was made a third-party defendant in the actions.
 
 
 13
 The language and timing of the by-laws shortly after controversy arose over representations in the merger negotiations and when commencement of litigation against the corporation was feared are persuasive that the board meant to cover Wisener's situation. The revision of the statute removes the perceived impediment to the carrying out of that intent. Later change of heart by new management should not defeat the claim.
 
 
 14
 We draw from this record a definite and firm conviction that a mistake has been made in finding a lack of retroactive intent on the part of the board. Such retroactive indemnification appears to us to accord with present public policy of the State of Illinois.
 
 
 15
 Reversed and remanded for determination of the amount due appellant as indemnification for litigation expenses.
 
 
 
 [1]
 The original Article XI of the AEI by-laws provided:
 Any person who at any time shall serve, or shall have served, as director, officer, or employee of this corporation, its subsidiaries and affiliates, or of any other enterprise at the request of the corporation, and the heirs, executors, and administrators of such person, shall be indemnified by this corporation against all costs and expenses (including but not limited to counsel fees, amounts of judgments paid, fines, penalties, and amounts paid in settlement) reasonably incurred in connection with the defense of any claim, action, suit, or proceeding, whether civil, criminal, administrative, or other, or in connection with any appeal therein, in which he or they may be involved by virtue of such person being or having been such director, officer, or employee; provided, however, that such indemnity shall not be operative with respect to (i) any matter as to which such person shall have been finally adjudged in such action, suit, or proceeding to be liable for negligence or misconduct in the performance of his duties as such director, officer, or employee, provided that in the case of a criminal action, suit, or proceeding, a conviction or judgment shall not be deemed an adjudication that the director, officer, or employee is liable for negligence or misconduct in the performance of his duties to such corporation if it shall be determined that he was acting in good faith in what he considered to be the best interests of the corporation without knowledge that the action was illegal; or (ii) any matter settled or compromised, in which it is determined that there is reasonable ground for such person being adjudged liable for negligence or misconduct in the performance of his duties as such director, officer, or employee. All such determinations shall be made by a majority of the Board of Directors who were not parties to such proceeding, or by one or more disinterested persons to whom the question shall be referred by the Board of Directors. The foregoing indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any by-law, agreement, vote of stockholders, or otherwise.
 
 
 [2]
 See Washington & Bishop, Indemnifying the Corporate Executive 114ff (1963). Frampton, Indemnification of Insiders' Litigation Expenses, 23 Law and Contemporary Problems 325 (1958)
 
 
 [3]
 Public Act 80-721, Ill.Rev.Stat. ch. 32, § 157.42.12 (1977) provides:
 (a) A corporation may indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or who is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.
 (b) A corporation may indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to the best interests of the corporation, and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the corporation, unless, and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.
 (c) To the extent that a director, officer, employee or agent of a corporation has been successful, on the merits or otherwise, in the defense of any action suit or proceeding referred to in paragraphs (a) and (b), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.
 
 
 [4]
 See Note, Indemnification of Directors, 76 Harv.L.Rev. 1403, 1405 (1963)