IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2000 Session

## VICKIE J. SHERMAN, vs. AMERICAN WATER HEATER COMPANY, INC.

**Direct Appeal from the Chancery Court for Washington County**
**No. 32143      Hon. Thomas J. Seeley, Jr., Circuit Judge**

**FEBRUARY 27, 2001**

**No. E2000-01389-COA-R3-CV**

The Trial Court held release given by plaintiff barred plaintiff's claim for statutory indemnification. On appeal we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Cherie S. Adams, Kingsport, Tennessee, for Appellant, Vickie J. Sherman.

William R. Seale and Mary M. Helms, Morristown, Tennessee, for Appellee, American Water Heater Company, Inc.

### OPINION

In this action, plaintiff sought indemnification from her former employer, American Water Heater Company ("AWHC") for reasonable expenses incurred in defending a sexual harassment action pursuant to Tennessee Code Annotated §48-18-503.

Plaintiff and defendant, AWHC, filed motions for summary judgment, and the Trial Court dismissed plaintiff's motion and granted defendant summary judgment, principally on the ground that plaintiff had signed a release, releasing her cause of action.

Summary judgment involves purely a question of law, and no presumption of

correctness attaches to the lower court's judgment. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

In this case, while the parties dispute some of the facts regarding the events relevant to the claim for sexual harassment, these facts are not material to the claim for indemnification. The facts concerning the release, plaintiff's position with the company, and the complaint against plaintiff and the subsequent dismissal of that claim are not in dispute. The issue thus becomes whether the defendant was entitled to judgment as a matter of law based on these facts.

Plaintiff retained counsel to represent her individually in the sexual harassment action which had been brought by a former hourly employee of defendant. Subsequently, plaintiff and defendant entered into a Release and Settlement Agreement, detailing the terms of plaintiff's termination from her employment with defendant. The Release reads, in pertinent part:

> By signing this Agreement, Employee releases and waives all claims in law or in equity Employee has or may have against the company as of the date this Agreement is signed by Employee, including but not limited to all claims related to Employee's past relationship with the Company. . . .

> This release and waiver includes all claims that may arise under the common law and all federal, state and local statutes, ordinances, rules, regulations and orders, including but not limited to any claim or cause of action based on the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Civile Rights Acts of 1866, 1871 and 1991, the Rehabilitation Act of 1973, the Employee Retirement Income Security Act of 1974, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the National Labor Relations Act, Executive Order 11246, and the Tennessee Human Rights Act, as each of them has been or may be amended. Employee further waives any right to any form of recovery of compensation from any action brought by Employee or on Employee's behalf, including any legal actions in connection with Employee's employment or termination of employment with the Company.

> Employee agrees not to file suit in any court or to file any administrative or other complaint or charge with any federal, state, or local agency against the company based on any matter occurring from the beginning of time to the date this Agreement is signed by Employee, including but not limited to any matter relating to Employee's employment or the termination of Employee's employment wit the Company.

Then, plaintiff in the sexual harassment suit filed a Notice of Dismissal as to his claim against plaintiff herein. The notice stated that the plaintiff "having reached a full and complete settlement in this case with Co-Defendant SouthCorp. . . ., hereby gives notice that he withdraws and dismisses the complaint in this action as to Defendant Vickie J. Sherman with prejudice." An Agreed Order of Dismissal was then entered.

The Trial Court held that defendant's claim for indemnification was barred by the Release and Settlement Agreement signed by the parties:

> But still more persuasive to this Court, is the release that was signed by the parties. And I do disagree that the statement that you cannot release a claim that at the time basically had not accrued, that is, a potential claim. I do think that is done all the time. And under Paragraph III of the agreement, it says, "This release and waiver includes all claims that may arise under the common law and all federal, state, and local statutes." Now, this claim does arise under State statute, and at the time this agreement was signed, the suit brought by Mr. Cable had been pending for some two months. . . . And certainly, by virtue of the fact that the suit against her was pending, she knew she was going to incur, in all likelihood, attorney's fees. The agreement signed by the parties on July 9, 1997 appears to this Court to be an attempt by both parties to release the other from any and all claims arising out of their employment relationship, and the Court's going to so find . . .

Plaintiff contends that this was in error because her claim for mandatory indemnification did not arise until she had a final, favorable judgment in the case brought against her, which was after the Release was signed by both parties. Because she contends the Release stated that it covered all claims "as of the date this agreement is signed," her claim was not covered, and matured after the agreement was signed.

Generally, the scope and extent of a release depends on the intent of the parties as expressed in the instrument. *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989). The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Gray v. Estate of Gray*, 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998).

The Release contains three separate phrases detailing what specifically is to be released under the Agreement. First, it is stated:

> Employee releases and waives all claims in law or in equity Employee *has or may have* against the Company *as of the date this Agreement is signed* by Employee . . .
> (Emphasis added)

The Release then states that it includes claims relating to Employee's past relationship with the Company, followed by a laundry list of possible claims that the Release covers "but is not limited to." One claim is specifically excluded from the Release, and that is any claim under the Age Discrimination in Employment Act "that may arise after the date of this Agreement."

The third paragraph states that:

> Employee agrees not to file suit in any court . . . against the company *based on any*

-3-

*matter occurring from the beginning of time to the date this Agreement is signed* by Employee, including but not limited to any matter relating to Employee's employment or the termination of Employee's employment with the company. (Emphasis added)

Next, the Agreement states:

This release and waiver includes all claims that may arise under the common law and all federal, state and local statutes, ordinances, rules, regulations and orders, including but not limited to any claim or cause of action based on [long list of federal and state acts] . . .

The Trial Judge's decision focuses on his interpretation of this final phrase "all claims that may arise under the common law. . ." The Court states in its Memorandum Opinion that it is not true that one cannot release a claim before it has accrued, and that such releases happen all the time. As such, the Court finds that the above quoted language extends the release to cover the suit for indemnification claim even though the claim had not matured by the time the release was signed by the parties.

In reaching this result, the Trial Court failed to interpret the Release as a whole, and instead focused on one phrase that it found to extend the release to the case in question. This reading, however, changes the plain meaning of other language in that same section of the Release. Specifically, it would render superfluous the clause stating that the employee waives all claims that "Employee *has or may have* against the Company *as of the date this Agreement is signed . . .*" Such an interpretation would have a similar effect on the third paragraph that provides the employee shall not bring any claim against the company "based on any matter occurring from the beginning of time to the date this Agreement is signed . . ."

While the Release does not purport to place any restrictions on the type of claim that is included, it does have temporal restrictions that the Trial Court reads out of the plain language of the Release. When considered in context of the whole Release, the language relied on by the Trial Court is clearly in reference to the breadth of claims included, and does not extend the Release beyond the temporal bounds set forth in the other two paragraphs. Thus the Release covers all claims that the plaintiff has or may have as of the date of the agreement, including all claims that may arise under common law and federal, state and local statutes, ordinances, rules, regulations and orders.

A general release such as the one under consideration, not restricted by its terms to particular claims or demands, covers all claims between the parties which are in existence and within their contemplation at the time it is executed. *Miller v. East Tennessee Trucks, Inc.*, 754 S.W.2d 73, 74 (Tenn. Ct. App. 1988); see generally 76 C.J.S. *Release* § 67 (1994).

In one of the earlier cases addressing the issue, *Poster v. Andrews*, 189 S.W.2d 580

(Tenn. 1943), the Tennessee Supreme Court decided that:

> [W]hile a release operates upon those matters expressed therein, which exist at the time of giving the same, it "cannot operate prospectively so as to defeat an action, the cause of which might afterwards arise."

p. 582-583 (quoting *Cocke v. Stuart*, 7 Tenn. (Peck) 137 (1823)).

Tennessee Courts have decided several cases concerning the temporal scope of releases, some of which are cited by the parties. In *Poster v. Andrews*, the Court relied upon the language in *Cocke v. Stuart* to hold that a release operates upon those matters expressed therein which exist at the time the release is given and cannot operate prospectively so as to defeat an action which arises at a time thereafter. 189 S.W.2d 580, 582-583 (Tenn. 1943).

To support its contention that the claim for indemnification is covered by the release, Defendant relies primarily upon *Donahue v. East Tennessee Natural Gas Co.*, 284 S.W.2d 692 (Tenn. Ct. App. 1955). In that case, the Plaintiffs were suing over damages to their property out of work done by the gas company when installing certain gas lines on a right-of-way that traversed their property. When the work was initially completed, the property owner and the gas company entered into a release agreement in which the plaintiffs received $150:

> in full payment and settlement for all damages . . . to all property . . . owned by the undersigned, arising out of or in connection with the construction of a pipe line under, upon and across the land described in the right of way agreement and the undersigned does hereby release and discharge East Tennessee Natural Gas Company, its agents, and contractors, from all liabilities therefor.

284 S.W.2d at 696.

The *Donohue* Court held that Plaintiffs were barred from bringing a claim for damages that were suffered after the release was signed but were a result of the work done prior to the release. The Court reasoned that such later damages were of a type that reasonably might have been expected to result and were in fact caused from the work already done by the defendant before the release was signed. *Id.*

While *Donohue* holds that damages that accrue after the signing of the release are barred by the release if the damages fell within the contemplation of the parties, the case is properly distinguishable from the case before us. The release in *Donohue* was not a "general release," but rather was a "specific release" because it was limited to the types of claims that were covered; only those claims relating to the work performed by the gas company in constructing the pipeline, and the subsequent change was caused by the work.

A specific release is one that is confined to specific matters or causes, and operates to release such claims that fairly come within the terms of the release. See *Cross v. Earls*, 517 S.W.2d 751 (Tenn. 1974); 76 C.J.S. *Release* § 65 (1994). Moreover, the release in *Donohue* did not contain any temporal limitation such as is found in the Release before us, (limiting it to claims "as of the date of the Release").

The matter before us is a circumstance where the parties are aware at the time they enter into the Release, of the potential for a claim, with several elements of that claim already in existence but the claim had not matured to the point of being judicable. We hold that by the wording of the Release, this claim is not barred, and adopt the rationale of *Schenck v. Minolta Office Systems, Inc.*, 802 P.2d 1131 (Colo. Ct. App. 1990) (cert. denied). Schenck was employed by defendants and after plaintiff gave notice of resignation, defendant's vice president caused a criminal action to be brought against Schenck for alleged theft of defendant's property. The defendant company then commenced a civil action against Schenck for alleged violation of non-competition agreements that was settled pursuant to a settlement agreement and mutual release. Subsequently the district attorney moved to dismiss the criminal case against Schenck because of insufficient evidence.

The settlement agreement signed by Schenck released defendants from claims "which [plaintiff has] as of the date hereof against AOE,[1] whether known or unknown." 802 P.2d at 1135. Colorado law, like Tennessee law, provides that a release ordinarily operates on matters expressed therein which are already in existence at the time of the giving of the release, and demands subsequently maturing are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed. *Id.* Accordingly, the Court held that the plaintiff's claim for malicious prosecution was not barred by the release because it was not an existing claim at the time the release was signed. The Colorado Court reasoned:

> Favorable termination of the underlying criminal action is an essential element of a malicious prosecution claim. Here, at the time the release was executed, the criminal prosecution against plaintiff was ongoing. Accordingly, plaintiff's claim of malicious prosecution did not accrue until after the release. Moreover, nothing in the release agreement mentions a possible future malicious prosecution claim by the plaintiff.

802 P.2d at 1135.

Plaintiff seeks mandatory indemnification under T.C.A. §§ 48-18-503 and 48-18-507. Section 503 provides for mandatory indemnification in the following circumstances:

> Unless limited by its charter, a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to

---

[1]AOE was purchased by Minolta.

which the director was a party because the director is or was a director of the corporation against reasonable expenses incurred by the director in connection with the proceeding.

Section 507 extends this entitlement to officers of the corporation, who are not directors, to the same extent as a director is entitled under § 48-18-503.

Defendant argues that even if the release does not bar plaintiff's suit, plaintiff is not entitled to mandatory indemnification because she was neither "wholly successful" in her defense, nor was she sued "because of" her position within the company. On these issues, the Court commented that it:

would view [Ms. Sherman's] dismissal with prejudice from Mr. Cable's lawsuit as being resolved successfully in her favor. It appears to the Court that Mr. Cable's suit was brought against Ms. Sherman . . . because of her position with American Water Heater. However, it was not solely because of her position. It was also because of the quite apparent special relationship that Mr. Cable and Ms. Sherman had. If it had not been for that special relationship, then certainly Ms. Sherman would not have been sued in any capacity.

In determining whether plaintiff is entitled to indemnification as a matter of law, it must be determined whether she was "wholly successful, on the merits or otherwise" in defending Cable's lawsuit. The Tennessee statute was patterned after the indemnification section of the Revised Model Business Corporation Act. Like the language in T.C.A. § 48-18-503, Section 8.52 of the RMBCA entitles a director to indemnification where that director is "wholly successful, on the merits or otherwise."

The Official Comment to the Model Act gives light to the meaning of those words.

A defendant is "wholly successful" only if the entire proceeding is disposed of on a basis which does not involve a finding of liability. . .

The language in earlier versions of the Model Act and in many other state statutes that the basis of success may be "on the merits or otherwise" is retained. While this standard may result in an occasional defendant becoming entitled to indemnification because of procedural defenses not related to the merits, e.g., the statute of limitations or disqualification of the plaintiff, it is unreasonable to require a defendant with a valid procedural defense to undergo a possibly prolonged and expensive trial on the merits in order to establish eligibility for mandatory indemnification.

Rev. Model Bus. Corp. Act § 8.52 Official Comment (1984).

Courts have interpreted the phrase "on the merits or otherwise" to include dismissal of the case with prejudice and settlement with the dismissal of claims. See generally 18B AM. JUR. 2D *Corporation*s § 1911 (1985); see also *Wisener v. Air Express International Corp.*, 583 F.2d 579 (2d Cir. 1978)(applying Illinois law); *Galdi v. Berg*, 359 F. Supp 698 (D. Del. 1973); *B & B Invest. Club v. Kleinert's Inc.*, 472 F.Supp 787 (E.D. Pa. 1979); *Merritt-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138 (Del. 1974).

On the strength of the foregoing authorities, we hold that plaintiff did obtain dismissal and did not incur any liability, and was therefore "successful on the merits or otherwise".

The final requisite for indemnification is whether the plaintiff was made a party to the lawsuit "because [she] is or was a director [officer or employee] of the corporation?" In order to be entitled to mandatory indemnification, she must show that she was sued by Cable "because [she] is or was a director [officer or employee] of the corporation." While the revised Model Business Corporation Act uses the phrase "because he was a director" many states use the phrase "by reason of the fact that" the person is or was a director. *See e.g.,* Delaware General Corporation Law, §145. Delaware law provides for indemnification where the person was sued "by reason of the fact that he is or was a director." In *Heffernan v. Pacific Dunlop GNB Corp.*, 965 F.2d 369 (7th Cir. 1992), the Court explored what it meant for a person to be sued "by reason of the fact" that he or she was a director of the corporation:

> We believe that Delaware's "by reason of the fact that" phrase is broad enough to encompass suits against a director in his official capacity, as well as suits against a director that arise more tangentially from his role, position or status as a director.

*Also see* 18B Am.Jur.2nd *Corporations* § 1898.

As for the specific issue of indemnification for defense of sexual harassment claims, California and Minnesota have directly confronted this situation. See *Jacobus v. Krambo Corp.*, 78 Cal.App.4th 1096, 93 Cal.Rptr.2d 425 (Cal. Ct. App. 2000); *Rudebeck v. Paulson*, 612 N.W.2d 450 (Minn. Ct. App. 2000). In *Rudebeck*, the Court was applying Delaware law; the indemnity statute provided for mandatory indemnification where a party was brought into a lawsuit "by reason of the fact that he is or was a director, officer, employee, or agent of the corporation." *Id.* at 455.

Paulson had been sued for alleged sexual harassment and received a favorable judgment from a jury. The Court found that Paulson was entitled to indemnification, agreeing that had it not been for the employment relationship, there would have been no suit for sexual harassment. *Id.* at 456.

In the case before us, plaintiff was the Vice President of Human Resources. It is clear that plaintiff and Cable had some degree of both a professional and a personal relationships. The crux of Cable's complaint for sexual harassment is as follows:

Defendant Sherman used her position as Vice President of Human Resources, and the apparent influence she exerted in management, as evidenced by her continued control of Plaintiff's continued employment with Southcorp, to obtain sexual intercourse from Plaintiff repeatedly, both at work and off premises, commencing in November of 1995 and continuing to the date of Plaintiff's termination of employment on May 2, 1996. Plaintiff submitted to Defendant's Sherman's sexual demands involuntarily, rather than reject her advances and face certain termination of his employment as Defendant Sherman made clear that her satisfaction would determine the continuation of Plaintiff's employment and advancement with Defendant Southcorp.

The alleged behavior giving rise to Cable's complaint clearly relates to Plaintiff's position of employment with Southcorp. Because Cable was alleging that Plaintiff used her position as Vice President of Human Resources and the resulting power over the employment of Cable in order to obtain sexual favors, it cannot be said that she was sued solely in an individual capacity. While it is true that the claim would fail were it not for the personal interactions between the two parties, this would be true of any claim for sexual harassment in which the employee's job was threatened and the alleged offender could be sued in both an individual capacity as well as because of his or her position in the company.

We conclude that plaintiff was sued because of her position with the company, and because she was successful in the defense of that suit, she is entitled to indemnification pursuant to T.C.A. §48-18-503 as a matter of law. Accordingly, we vacate the judgment of the Trial Court and remand for the Trial Court to enter judgment for plaintiff's reasonable expenses in accordance with the statute.

The cost of the appeal is assessed to defendant American Water Heater Company, Inc.

_____
HERSCHEL PICKENS FRANKS, J.