IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2007 Session

## REBECCA WOODY v. A.W. CHESTERTON COMPANY ET AL.

Appeal from the Circuit Court for Hamilton County
No. 06CI520    Jackie Schulten, Judge

No. M2007-01210-COA-R9-CV - Filed March 13, 2008

An insulator and his wife sued multiple corporate defendants for damages related to his development of mesothelioma from exposure to asbestos. Most of the defendants filed motions for summary judgment based upon a release agreement signed by the plaintiffs in 1980 in settlement of another lawsuit concerning asbestos exposure. The trial court denied the motions for summary judgment. We have concluded that, except as to any claims arising from post-release asbestos exposure, the trial court erred in denying the motions for summary judgment.

Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part, Reversed in Part

ANDY D. BENNETT, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JON KERRY BLACKWOOD, SP.J., joined.

Dwight E. Tarwater, Thomas A. Bickers, John W. Elder, and Joshua R. Walker, Knoxville, Tennessee, for the appellants, Bayer CropScience, Inc., Certain Teed Corporation, General Electric Company, Georgia-Pacific LLC, Industrial Holdings Corporation, and Union Carbide Corporation.

Michael J. King and M. Denise Moretz, Knoxville, Tennessee, for the appellants, National Service Industries, Inc., Mobil Corporation, and CBS Corporation.

Jimmy F. Rodgers, Jr., Chattanooga, Tennessee; John E. "Rett" Guerry, III, and Robert J. Klug, Sr., Mt. Pleasant, South Carolina, for the appellee, Rebecca Woody.

## OPINION

Wayne Woody, a member of the Asbestos and Insulators Workers Union, and his wife, Rebecca Woody, filed suit in federal district court in June 1979 against 25 corporations that allegedly "caused asbestos and asbestos insulation materials to be placed in the stream of interstate

commerce."[1] Mr. Woody had been diagnosed with asbestosis, a non-malignant, asbestos-related lung disease. He and his wife sought damages for his asbestos-related illness, which they alleged to be caused by occupational exposure to the defendants' asbestos and insulation materials. They were represented by counsel and settled the lawsuit in September 1980 for a lump sum payment of $35,000.00. As part of the settlement, Mr. Woody and his wife signed a Complete Release of All Claims ("release"), the effect of which is at issue in the present case.

In September 2006, Mr. Woody was diagnosed with pleural mesothelioma, a malignant, asbestos-related lung disease. The present lawsuit was filed by Mr. Woody and his wife in November 2006 shortly before his death as a result of mesothelioma.[2] The complaint named 37 defendant corporations; only one of the corporations, CertainTeed Corporation, was a party to the 1979 lawsuit. According to the complaint, Mr. Woody was exposed, in both occupational and non-occupational settings, to "asbestos related materials and other asbestos containing products mined, or manufactured, processed, imported, converted, compounded, sold, distributed or installed" by the defendants. As a result of these exposures, the complaint alleges, Mr. Woody developed mesothelioma. Although the complaint does not specify exposure dates, Mr. Woody continued to work as an insulator after signing the 1980 release, and the plaintiff's claims are broad enough to include post-release exposures. Causes of action for negligence, strict liability, breach of warranty, civil conspiracy, and loss of consortium are asserted.

After filing answers pleading release as a defense, 27 of the defendants[3] either filed or joined in motions for summary judgment, asserting that the 1980 release barred all of the Woodys' claims. On April 12, 2007, the trial court entered an order ruling on 21 motions for summary judgment, one of which was granted on the basis that the named company had "never been in the asbestos business, has never employed [Mr. Woody], and in no respect has had any contact with any of the issues involved in the case." The court denied the other 20 motions for summary judgment based on its conclusion that "the prior release does not bar the Plaintiff's later claim based upon subsequently diagnosed mesothelioma." In agreed orders entered on May 7, 2007, the same ruling was applied to the other summary judgment motions.

We granted the defendants' application for interlocutory appeal pursuant to Tenn. R. App. P. 9.

---

[1] *Wayne S. Woody v. Johns-Manville Sales Corp.*, No. CIV-1-79-158 (E.D. Tenn.), *dismissed* Sept. 30, 1980.

[2] Ms. Woody filed an amended complaint after her husband's death substituting herself as plaintiff, individually and as the surviving spouse of Wayne Woody.

[3] The defendants involved in this appeal are A.W. Chesterton Company; Advance Auto Parts, Inc.; Bayer CropScience, Inc.; Borg Warner Morse TEC, Inc.; Breeding Insulation Company, Inc.; Breeding Insulation Company, Chattanooga, Inc.; CBS Corporation; CertainTeed Corporation; Crane Company; Ford Motor Company; Foster Wheeler Corporation; General Electric Company; General Motors Corporation; Georgia-Pacific, LLC; Goodyear Tire & Rubber Company; Goulds Pumps; Industrial Holdings Corporation; Ingersoll-Rand Corporation; Maremont Exhaust Products, Inc.; Mobil Corporation; National Service Industries, Inc.; Pharmacia Corporation f/k/a Monsanto Company; Pneumo Abex LLC, as successor in interest to Alex Corporation; Riley Power, Inc.; and Union Carbide Corporation.

## ANALYSIS

In this interlocutory appeal, we are asked to determine whether the trial court erred in denying the defendants' motions for summary judgment.

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Pub. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Pursuant to Tenn. R. Civ. P. 56.04, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." In the present case, the relevant facts are not in dispute; therefore, we must determine the legal effect of the 1980 release on the undisputed facts.

The following provisions of the 1980 release are essential to determining its effect on the Woodys' claims in this case:

> For the sole and only consideration of Thirty-Five Thousand Dollars ($35,000.00), to the undersigned in hand paid, receipt of which is hereby acknowledged, we hereby release and discharge [names of defendants in federal district court case], their agents, servants, successors and predecessors and any corporation acquired by, associated with or affiliated with each as parent or subsidiary, and further release all of the respective officers, directors, agents, servants and employees of said companies, and further release *any other persons, corporations, or entities, even though not named herein*, involved in the distribution, sale, production, manufacturing, mining, or processing of any insulation product, from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services or consortium, expenses and compensation whatsoever, *which the undersigned now have or which may hereafter accrue on account of or in any way growing out of all known and unknown, foreseen and unforeseen,* bodily and personal injuries and property damage, and the consequences thereof, resulting or to result from exposure to any insulation material, any asbestos-containing material or any alleged dust-producing material on the part of the undersigned Wayne S. Woody, including all claims for loss of consortium by the undersigned Rebecca Woody, or any other claim she might have arising out of her husband's alleged personal injuries.
>
> . . . .
>
> The undersigned hereby declare and represent that the injuries sustained are or may be permanent or progressive and that recovery therefrom is uncertain and indefinite, and in making this Release it is understood and agreed that the undersigned rely wholly upon their judgment, belief, and knowledge of the nature, extent, effect, and duration of said injuries and liability therefor and is made without

reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed. *This Release is intended to cover any and all injuries of any nature, including the possible sequelae thereof, including but not limited to asbestosis, cor pulmonale, lung cancer, and other form*[s] *of cancer, or mesothelioma.*

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim and that liability on the part of the party or parties hereby released, and that said releasees deny liability therefor.

(emphasis added).

(1)

Ms. Woody argues that the 1980 release cannot properly shield from liability defendants not named in the release due to the absence of consideration from those defendants.

A release is a contract; therefore, the rules of construction applicable to contracts apply in construing the terms of a release. *Richland Country Club, Inc. v. CRC Equities, Inc., RCC*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). By its terms, the release purports to release from liability the named corporations and their agents as well as "any other persons, corporations, or entities, even though not named herein, involved in the distribution, sale, production, manufacturing, mining, or processing of any insulation product, asbestos-containing product, or alleged dust-producing product." There appears to be no dispute between the parties in the present case that the appellants fit within this category of released entities. The question is whether these defendants can properly benefit from the release when they were not named in or a party to the release and gave no consideration to the Moodys for release from liability.

In interpreting this release provision, it is important to note that the release was executed prior to the Tennessee Supreme Court's decision in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), in which the court adopted modified comparative fault. Under the principles of contributory negligence and joint and several liability, an injured party could seek full compensation from one among multiple tortfeasors, and that tortfeasor could then seek contribution from other tortfeasors.[4] The Uniform Contribution Among Tort-feasors Act, codified at Tenn. Code Ann. § 29-11-101 *et seq.*, provides that a release given to one of two or more tortfeasors "does not discharge any of the other tort-feasors from liability for the injury or wrongful death *unless its terms so provide*." Tenn. Code Ann. § 29-11-105(a)(1) (emphasis added). Furthermore, "A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement." Tenn. Code Ann. § 29-11-102(d). Under this system, a settling defendant could, in essence, buy its right to seek

---

[4]By contrast, under modified comparative negligence, a defendant is "liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence." *McIntyre*, 833 S.W.2d at 58.

-4-

contribution from other tortfeasors by including those other tortfeasors in the release. *See Evans v. Tillett Bros. Const. Co., Inc.*, 545 S.W.2d 8, 11-12 (Tenn. Ct. App. 1976); *Ballinger v. Owens-Illinois, Inc.*, 829 F.2d 38, No. 86-5755, 1987 WL 44451, at *1 (6th Cir. Sept. 14, 1987) (no petition for cert. filed).

The 1980 release was supported by consideration in that the settling defendants paid $35,000.00 to the plaintiffs and the defendants received a release of their liability as well as the liability of other possible tortfeasors, against whom the defendants now had the right to seek contribution. There is no requirement that each released tortfeasor provide its own consideration, just that the promise is supported by consideration. *Burchell Ins. Svcs., Inc. v. Western Sizzlin Steakhouse of Dyersburg*, No. E2003-01001-COA-R3-CV, 2004 WL 1459398, at *2 (Tenn. Ct. App. June 29, 2004) (no Tenn. R. App. P. 11 application filed); *see also Morison v. General Motors Corp.*, 428 F.2d 952, 953-54 (5th Cir. 1970).

In *Ballinger*, a case interpreting Tennessee law, the releases from liability for asbestos exposure contained language covering the named defendants as well as all other persons or corporations who might be liable. *Ballinger*, 1987 WL at *1. The court upheld the application of the releases to other alleged tortfeasors. *Id.*; *see also Morison*, 428 F.2d at 952; *Peters v. Butler*, 251 A.2d 600, 602 (Md. 1969); *Hasselrode v. Gnagey*, 172 A.2d 764, 765 (Pa. 1961).

We therefore find that, in accordance with its plain language, the release in this case properly covers the appellants.

(2)

Ms. Woody further argues that Tennessee law does not allow the release of "unaccrued/potential/future/prospective causes of action."

As previously stated, a release is a contract and is subject to the rules of construction applicable to contracts. *Richland*, 832 S.W.2d at 557. Any "[a]mbiguous language in a contract is construed against the drafter." *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989). The following principles apply when interpreting a release:

> Generally speaking, the scope and extent of [a] release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release.

*Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974); *see also Sherman v. Am. Water Heater Co., Inc.*, 50 S.W.3d 455, 457 (Tenn. Ct. App. 2001). The following principles apply in determining the intent of the parties:

> "In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall

govern and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in light of all of the surrounding facts and circumstances under which the parties acted."

*Evans*, 545 S.W.2d at 11 (quoting 66 AM.JUR.2D *Release* § 30); *see also Jackson*, 776 S.W.2d at 118.

In support of her argument that Tennessee law does not allow the release of future claims, Ms. Woody cites *Poster v. Andrews*, 189 S.W.2d 580 (Tenn. 1943), and *Cocke v. Stuart*, 7 Tenn. (Peck) 137 (1823). Both cases involved causes of action that did not exist at the time when the plaintiffs signed the releases, and the releases did not expressly cover such claims. While some language used by the court in *Cocke* and quoted by the court in *Poster* suggests that a prospective claim cannot be released, subsequent cases have clarified the issue by indicating that claims arising after the signing of a release may be released if the language of the release so provides. In *Sherman,* the issue was whether a release signed by an employee at the time of her termination covered an indemnification claim. *Sherman*, 50 S.W.3d at 456. Under the terms of the release, the employee agreed not to file suit against the company "based on any matter occurring from the beginning of time to the date this Agreement is signed." *Id.* at 458. Interpreting the wording of the release to impose temporal restrictions, the court ruled that the indemnification claim was not barred by the release. The court made the following statement while discussing a similar Colorado case:

> Colorado law, like Tennessee law, provides that a release ordinarily operates on matters expressed therein which are already in existence at the time of the giving of the release, and demands subsequently maturing are not as a rule discharged by the release *unless expressly embraced therein or falling within the fair import of the terms employed.*

*Id.* at 460 (emphasis added); *see also Tierney & Black*, *Inc. v. Siemens Power Corp.*, 79 Fed. Appx. 740, 742 (6th Cir. 2003).

We return again to the proposition that it is the language of the release that determines whether it covers injuries that arise prospectively. This is true even with respect to injuries resulting from acts or omissions that had not occurred at the time of the release, if the release itself expressly so provides. It is well-settled that "public policy of Tennessee favors freedom to contract against liability for negligence." *Dixon v. Manier*, 545 S.W.2d 948, 950 (Tenn. Ct. App. 1976) (upholding a release from liability for negligence signed by a customer prior to application of a hair straightener at a cosmetology school); *see also Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973) (upholding exculpatory clause in release used by health club). The courts have invalidated some exculpatory contracts based upon public policy considerations. *See Maggart v. Almany Realtors, Inc.*, No. M2005-02532-COA-R3-CV, 2007 WL 2198204 at * 6 (Tenn. Ct. App. July 26, 2007) (perm. app. granted Nov. 13, 2007). Thus, in determining the prospective application of a particular release, a court must distinguish between two types of "future" claims: (a) claims for injuries discovered post-release that resulted from pre-release occurrences (in this case, exposure to asbestos); and (b) claims based upon injuries that resulted from post-release occurrences. A release

covering the second category of claims is an exculpatory provision, contracting against liability for future negligence. *See Empr*ess *Health*, 503 S.W.2d at 190-191.

Applying these principles to the case at bar, we have concluded that the 1980 release bars any claims based upon injuries caused by Mr. Woody's pre-release exposure to asbestos, including the development of mesothelioma. The language of the release expressly states that it releases all claims "which the undersigned now have or which may hereafter accrue on account of or in any way growing out of all known and unknown, foreseen and unforeseen*"* injuries "resulting or to result from" exposure to asbestos by Mr. Woody. The release further provides that it is intended to "cover any and all injuries of any nature, including the possible sequelae thereof, including but not limited to asbestosis, cor pulmonale, lung cancer, and other form[s] of cancer, or mesothelioma." Thus, the language of the release provides that it covers any injuries, including mesothelioma, that might later develop as a result of Mr. Woody's prior exposure to asbestos. This interpretation is consistent with other cases interpreting similar asbestos releases. *See Sheppard v. Acands, Inc.*, Nos. CV950323560S, CV990368053S, 2005 WL 1433875 (Conn. Super. Ct. May 26, 2005); *Spadaro v. Abex Corp.*, 1993 WL 603378 (Del. Super. Ct. Sept. 9, 1993); *Fisher v. Owens-Corning Fiberglass Corp.*, 868 F.2d 1175 (10ᵗʰ Cir. 1989).

After careful review of the release language and the circumstances surrounding its signing, as part of the settlement of a pending lawsuit, we have concluded that the release does not cover claims as to injuries arising out of post-release asbestos exposure. The language of the release does not expressly address liability for asbestos exposure occurring after the signing of the release, and there is no indication that such injuries were within the contemplation of the parties at the time of the release. We need not decide, therefore, whether an exculpatory provision in an asbestos release such as that signed by Ms. Woody would violate public policy.

Ms. Woody argues that the Tennessee Supreme Court's decision in *Potts v. Celotex Corp.*, 796 S.W.2d 678 (Tenn. 1990), necessitates a conclusion that mesothelioma is not covered by the release. We must disagree. In *Potts*, the court concluded that asbestosis and mesothelioma are two distinct diseases in the context of determining when a cause of action accrues for statute of limitations purposes. *Id.* at 684-85. The two-disease analysis has no bearing on the scope of a release, which is determined by the intent of the parties as expressed in the release. The following analysis from a similar case, *Sheppard v. Acands, Inc.*, likewise applies here:

> The two disease rule, however, is a rule primarily related to the statute of limitations. It does, in the context of asbestos litigation, recognize that the diagnosis of a non-malignant asbestos related disease begins the running of the statute only for that disease. The later diagnosis of a malignant related condition creates a new cause of action with the commencement of the statute period being when the later diagnosis was made. This rule does not affect the question of the validity of the release at issue. The parties here, as they had a right to do, reached an agreement which included a release of the defendant General Electric of any and all claims, present and future, of and for all potential liabilities resulting or to result from exposure to an asbestos-containing material. The plaintiffs' exposure to asbestos had occurred and was complete at the time the release is as [sic] executed and it was the manifestation

of the disease which postdated the releases. The language of the release foresaw the possibility that other diseases might manifest themselves in the future and provided for and included such an event, should it occur.

*Sheppard*, 2005 WL at *3.

In conclusion, the 1980 release covers all claims arising out of Mr. Woody's exposure to asbestos prior to the signing of the release; this includes conditions, including mesothelioma, discovered after the signing of the release that resulted from pre-release asbestos exposure. The 1980 release does not, however, bar any claims related to asbestos exposure that occurred after the signing of the release.

Costs of appeal are assessed against the appellants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE