**TIERNEY & BLACK, INC.,**
Plaintiff–Appellant,

v.

**SIEMENS POWER CORPORATION,**
Defendant–Appellee.

No. 01–6518.

United States Court of Appeals,
Sixth Circuit.

Sept. 12, 2003.

Rick J. Bearfield, Bearfield & McClellan, Johnson City, TN, for Plaintiff–Appellant.

Delbert D. Miller, Heidi S. Bateman, Miller & Bateman, Seattle, WA, for Defendant–Appellee.

Before DAVID A. NELSON and COLE, Circuit Judges, and ROSEN, District Judge.*

NELSON, Circuit Judge.

The central issue in this appeal is whether the district court erred in granting summary judgment for the defense on a claim of conversion asserted under Tennessee law. Unlike the district court, we are not persuaded that the conversion claim is barred by a release that the plaintiff executed before the claim had accrued. We are persuaded, however, that the plaintiff has failed to demonstrate the existence of a triable issue as to whether the alleged conversion in fact occurred. The challenged judgment will be affirmed on that basis.

I

In 1995, Tierney & Black, Inc.[1] contracted with Siemens Power Corporation to

---

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Tierney & Black was then known as Recovery Dynamics Corporation. It changed its name in 1997.

construct and operate a "Mobile Extraction/Recovery Facility," or "MERF," at Siemens' site in Richland, Washington. The purpose of the MERF is to recover uranium residue from "wet waste" generated during the manufacture of uranium fuel for commercial power reactors.

The parties' contract—styled a "Services Agreement"—provided that "[Tierney & Black] shall procure, install, fabricate, deliver and set-up the MERF at the [Siemens] site," but that the MERF "shall be owned by [Tierney & Black]." [2] "Delivery of the MERF," the contract further provided, "shall be the responsibility of [Tierney & Black]."

Siemens agreed to pay capital equipment and related subcontractor and freight costs in addition to paying Tierney & Black for engineering and installation services provided on a time and materials basis. Tierney & Black was also to be compensated on a time and materials basis for operating the facility. A change order executed in 1997 provided that Siemens' total expenditure on the project should not exceed $2,112,663, of which $401,552 represented projected operating costs.

Tierney & Black agreed that Siemens would have the right to terminate the Services Agreement, by written notice, either for default by Tierney & Black or simply for Siemens' "own convenience." If Siemens availed itself of the termination right, it would receive title to the MERF (including materials that were not yet incorporated into the facility) and could either complete Tierney & Black's work itself or procure the services of another contractor. Tierney & Black, in such circumstances, was to receive a part of the contract price proportionate to the amount of work it had completed.

In February of 1998, with construction of the MERF not yet finished, Tierney & Black and Siemens decided that the Services Agreement was "no longer an adequate expression of the rights and obligations of either party." They therefore executed an "Interim Agreement," the key provisions of which were (1) a release of all claims that either party might have against the other "under the Contract" and (2) a promise to negotiate, in good faith, "a change order to the Contract." Siemens did not exercise its contractual right to terminate the agreement.

Also in February, Tierney & Black entered into a "Release and Settlement Agreement" with Mobile International, Inc., the subcontractor that was constructing the MERF at a location in Oklahoma. The agreement provided that Mobile would release the MERF to Tierney & Black and Siemens upon receipt of a final payment, and that Tierney & Black would be "fully responsible for the loading, offloading, erection and shipping" of the MERF to Siemens' Richland site by March 30, 1998.

Siemens made the final payment to Mobile in March of 1998, bringing Siemens' total expenditures on the MERF to approximately $1.9 million. Siemens then informed Tierney & Black that it would like to make its own arrangements for shipment of the MERF from Oklahoma to Washington. Tierney & Black responded that negotiation of the change order contemplated by the Interim Agreement must precede shipment of the MERF, and that removal of the facility by Siemens, without Tierney & Black's permission, would constitute a breach of contract. Siemens proceeded nevertheless to arrange the shipment, and the MERF arrived at Siemens'

2. The contract contemplated leasing of the MERF to other Tierney & Black customers after an "initial processing campaign" by Siemens. Tierney & Black was to give Siemens a "rebate" of 50 percent of the lease revenues (up to a specified dollar maximum).

site in April of 1998. The facility was not functional when it arrived, but Siemens was able to make it work by the middle of 1999. The change order contemplated by the Interim Agreement was never negotiated, and Tierney & Black has had nothing to do with the operation of the facility.

In December of 1998, Tierney & Black sued Siemens for breach of the Services Agreement, breach of the Interim Agreement, and inducement of Mobile to breach the Release and Settlement Agreement. After learning during discovery that the MERF was in operation at Siemens' site, Tierney & Black filed a supplemental complaint alleging conversion of the MERF.

Siemens then filed a series of three summary judgment motions. First, Siemens moved for summary judgment on the claims in which breach of the Services Agreement was alleged. Citing Tierney & Black's release of all claims arising under the contract, the district court granted the motion. Second, Siemens moved for summary judgment on the conversion claim. Holding that the release covered that claim as well, the district court again granted Siemens' motion. The court denied a motion for reconsideration filed by Tierney & Black.

In its third motion, Siemens sought summary judgment on the remaining claims of breach of the Interim Agreement and inducement of breach by Mobile. The district court granted the motion as to the claim for inducement of breach, leaving the claim for breach of the Interim Agreement as the only surviving claim. The court ordered Tierney & Black to file a specification of the damages resulting from the alleged failure to conduct negotiations on a change order, along with a list of exhibits supporting its damages calculations.

After receiving Tierney & Black's statement of damages, Siemens moved for an order excluding all evidence of damages on the grounds that the claimed damages were impermissibly vague and speculative. The district court granted the motion. Tierney & Black then moved for a voluntary dismissal, without prejudice, and the district court granted that motion as well. Final judgment having been entered as to all claims that were not dismissed, Tierney & Black filed a timely appeal from (1) the summary judgment on the conversion claim, (2) the denial of reconsideration of that summary judgment, (3) the summary judgment on the inducement-to-breach claim, (4) the order requiring Tierney & Black to file a list of damages, and (5) the order excluding evidence of damages.

## II

We review the summary judgment on Tierney & Black's conversion claim de novo. See, e.g., *Chao v. Hall Holding Co.*, 285 F.3d 415, 440 (6th Cir.2002), *cert. denied*, 537 U.S. 1168, 123 S.Ct. 966, 154 L.Ed.2d 908 (2003). We may affirm the judgment on any ground that is supported by the record. See *id.*

## A

■ As we have seen, the district court held that Tierney & Black released its conversion claim when it executed the Interim Agreement. In this, we believe, the district court erred. Assuming, for purposes of analysis, that the conversion claim falls within the substantive scope of the release – *i.e.*, that it arises "under the contract" – we think that the claim is plainly outside of the release's temporal bounds. Under Tennessee law, a general release "covers all claims between the parties which are in existence and within their contemplation *at the time it is executed.*" *Sherman v. American Water Heater Co.*, 50 S.W.3d 455, 459 (Tenn.Ct.App.2001) (emphasis added); *see Poster v. Andrews*, 182 Tenn. 671, 189 S.W.2d 580, 582–83 (1943) (holding that a release "cannot oper-

ate prospectively so as to defeat an action, the cause of which might afterwards arise"). It is undisputed that Siemens had not yet taken the MERF when the release was executed in February of 1998. We see nothing in the language of the release, moreover, to suggest that the parties intended it to apply prospectively. The release thus does not cover the asserted claim of conversion.

## B

Despite the inapplicability of the release, we believe that Tierney & Black's conversion claim must fail as a matter of law. Irrespective of legal title, we see no genuine issue of material fact concerning Siemens' right to possess the MERF and to have the benefit of its use during the time frame at issue here. Such a right being established, in our view, on the indisputable facts of this case, Siemens' taking of the MERF cannot constitute conversion under Tennessee law.

The Tennessee courts have defined conversion as "the appropriation of [a] thing to the [defendant's] own use and benefit, by the exercise of dominion over it, in defiance of [the] plaintiff's right." *Barger v. Webb,* 216 Tenn. 275, 391 S.W.2d 664, 665 (1965); *Mammoth Cave Production Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.App.1977). In the case at bar, Siemens undeniably appropriated the MERF and exercised dominion over it. As we read the record, however, it cannot be shown that Siemens did so "in defiance of" Tierney & Black's rights.

The Services Agreement, as we have seen, provided for installation and operation of the MERF on Siemens' premises.[3] Similarly, Tierney & Black's settlement agreement with Mobile provided for shipment of the MERF "to the Siemens Power

Corporation site in Richland, WA" -- and the settlement agreement required Mobile, upon receipt of its final payment, to release the MERF to Tierney & Black *and Siemens.*

The natural implication of these provisions, we believe, is that Siemens had the right to possess the MERF and to benefit from its use. Tierney & Black has not persuaded us that a jury would be free to find a contrary contractual intent. Tierney & Black points to the Services Agreement's provision with respect to ownership, but Tierney & Black's ownership of the MERF is not inconsistent with possession and use of the MERF by Siemens, any more than a lessor's ownership of property is inconsistent with its possession and use by a lessee. We are also unpersuaded that Siemens' request to arrange shipment of the MERF itself, rather than have the shipment arranged by Tierney & Black, suggests that Siemens had no right of possession. That request shows only that Tierney & Black was contractually charged with delivery of the MERF; it does not show that Tierney & Black was free to withhold the MERF from Siemens or to transport it anywhere but to Siemens' site.

Beyond the relevant contractual language, Siemens' substantial expenditures on the MERF seem to us to establish an equitable right of possession. By April of 1998, after all, Siemens had paid more than the contract price for the engineering and construction phases of the project -- and about half of the expected costs of operation -- even though the facility was not functional. These payments gave rise to a beneficial interest in the facility, notwithstanding the fact that Tierney & Black held legal title. See, *e.g., Smalling v. Ter-*

---

**3.** As Tierney & Black's attorney acknowledged at oral argument, the parties did not terminate the Services Agreement by entering into the Interim Agreement. The provisions of the Services Agreement are relevant, therefore, to the parties' rights as of April of 1998.

*rell,* 943 S.W.2d 397, 400–01 (Tenn.App. 1996) (noting that payment of consideration for property creates a "resulting trust" for the benefit of the payor). This beneficial interest, we believe, entitled Siemens to possess the MERF.

Our recognition of an equitable right of possession works no unfairness on Tierney & Black. Under the terms of the Services Agreement, Siemens had the right unilaterally to cancel the contract and to assume ownership – not just possession – of the MERF. Tierney & Black had agreed to walk away in such circumstances with only a pro rata payment. Siemens did not exercise its termination right, but the fact that it chose to preserve the relationship (and, incidentally, Tierney & Black's legal title) should not detract from the beneficial interest that is implicit in these contractual terms.

▉ We conclude that there is no genuine issue of material fact with respect to Siemens' right of possession. Therefore, as Tierney & Black was not entitled to exclude Siemens from possession and use of the MERF, it cannot be said that Siemens' appropriation of the MERF was "inconsistent with [Tierney & Black's] rights." *Mammoth Cave,* 569 S.W.2d at 836.[4]

Tierney & Black suggests that operation of the MERF by Siemens, rather than by Tierney & Black, constitutes conversion. We disagree. Conversion, to repeat, involves an exercise of dominion that is inconsistent with the owner's property rights. See, *e.g., Barger,* 391 S.W.2d at 665. Ownership ordinarily carries with it the right to use the property, see, *e.g., Woods v. M.J. Kelley Co.,* 592 S.W.2d 567, 570 (Tenn.), *cert. denied,* 447 U.S. 905, 100

S.Ct. 2987, 64 L.Ed.2d 854 (1980), but Tierney & Black, by agreeing to install and operate the MERF at Siemens' site, relinquished its right of unrestricted use. The only use permitted to Tierney & Black – at least during the processing of Siemens' waste – was that authorized by the Services Agreement. It follows from this that Siemens' decision to operate the MERF itself deprived Tierney & Black, at most, of a contractual right – not a right incident to ownership. The district court properly entered summary judgment on Tierney & Black's claim of conversion.

### III

Asserting that the other orders identified in its notice of appeal – the order denying reconsideration of the summary judgment on the conversion claim, the order granting summary judgment on the inducement-to-breach claim, and the orders limiting Tierney & Black's presentation of damages evidence in connection with the failure-to-negotiate claim – stand or fall with the order granting summary judgment on the conversion claim, Tierney & Black did not brief any issues relating to those orders. Regardless of whether Tierney & Black's assertion is correct, its appeal from the other orders must fail. See, *e.g., Security Watch, Inc. v. Sentinel Systems, Inc.,* 176 F.3d 369, 376 (6th Cir.1999) (refusing to consider a point not addressed in the defendants' brief), *cert. denied,* 528 U.S. 1181, 120 S.Ct. 1220, 145 L.Ed.2d 1120 (2000).

AFFIRMED.

---

**4.** Because the Services Agreement made Tierney & Black responsible for delivering the MERF, it may be that Tierney & Black had the right to exclude Siemens from participation in the delivery. Given that the MERF had to be shipped to Siemens regardless of who shipped it, however, we do not think Tierney & Black could have been damaged by Siemens' assumption of control over the shipping process.