**FREIGHTLINER OF KNOXVILLE, INC.; Carroll Properties, L.P.; and Buddie E. Carroll, Plaintiffs,**

v.

**DAIMLERCHRYSLER VANS, LLC; and Freightliner, LLC, Defendants.**

No. 3:05–CV–339.

United States District Court,
E.D. Tennessee,
at Knoxville.

July 17, 2006.

Katherine M. Hamilton, McCampbell & Young, PC, Robert S. Stone, Jr., Young, Williams, Kirk & Stone, PC, Knoxville, TN, R. Craig Spickard, W. Douglas Moody, Jr., Myers & Fuller, PA, Tallahassee, FL, for Plaintiffs.

George W. Mykulak, Joseph J. Mueller, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Boston, MA, Jennifer Ziegenhorn, Husch & Eppenberger, LLC, Memphis, TN, Cassandra H. McCauley, Jon P. Christiansen, Foley & Lardner, Milwaukee, WI, Jerry W. Laughlin, Rogers, Laughlin, Nunnally, Hood & Crum, Greeneville, TN, for Defendants.

### MEMORANDUM OPINION

VARLAN, District Judge.

This civil action is before the Court on several pretrial motions: defendant Freightliner LLC's Motion to Dismiss Amended and Restated Complaint [Doc. 36]; defendant DC Vans's Motion to Dismiss the Amended and Restated Complaint [Doc. 39]; and Plaintiffs' Motion to Strike DC Vans's Notice of Supplemental Authority [Doc. 44]. The issues raised in the pending motions have been exhaustively briefed [see Docs. 37, 40, 42, 43, 45, 47, 48, 49, 50, 53, 54, 55, 56, 57, 59, 60, 61, and 62] and the Court heard the arguments of counsel on February 1, 2006.

After careful consideration of the pending motions, the related pleadings and materials, and the arguments of counsel, plaintiffs' motion to strike will be denied, Freightliner LLC's motion to dismiss will be granted, and defendant DC Vans's motion to dismiss will be granted. Consequently, this action will be dismissed in its entirety.

### I. Facts

As set forth in the Amended Complaint [Doc. 35], plaintiff Freightliner of Knoxville, Inc. ("FOK") is a Tennessee corporation and, pursuant to a series of franchise agreements, an authorized seller and servicer of Freightliner brand medium and heavy-duty trucks. FOK has been a Freightliner dealer for over fifteen years. Plaintiff Carroll Properties, L.P. is a Tennessee limited partnership that built and leased the FOK facility to plaintiff Buddie E. Carroll who, in turn, sub-leased the facility to FOK. Plaintiff Buddie E. Carroll, a Tennessee resident, is the sole shareholder of FOK and its president.

Defendant Freightliner, LLC ("FLLC") is a Delaware limited liability company that is wholly owned by DaimerChrysler, AG. FLLC is a manufacturer and distributor of medium and heavy-duty commercial vehicles that are marketed primarily through a network of authorized Freightliner dealers. Defendant DaimlerChrysler Vans, LLC ("DC Vans") is a Delaware limited liability company that is wholly owned by DaimlerChrysler, AG. DC Vans is the national distributor of a line of motor vehicles marketed under the Freightliner brand known as the "Freightliner Sprinter."

As explained in the Amended Complaint, in February 2002, FOK was presented with an opportunity to sell a new commercial van called "Sprinter." According to plaintiffs, DaimlerChrysler, AG had been successfully manufacturing and selling the Sprinter vans in Europe and decided to introduce the product in the United States. In order to become a Sprinter dealer, Carroll Properties invested an additional $800,000 into its new FOK facility to satisfy the space requirements for the new Sprinter product. Sometime after May 2001, FOK was approved for a Sprinter retail sales and service agreement.

Prior to execution of the Dealer Agreement, FLLC informed FOK that DC Vans would be substituted for FLLC as the distributor of the Freightliner Sprinter vans. On September 26, 2001, FOK entered into a Dealer Agreement with DC Vans for the sale of Sprinter products [Doc. 35, Ex. B]. As a condition of signing the Dealer Agreement, DC Vans required FOK to sign a release of all prior claims in favor of DC Vans and FLLC ("the Sprinter Release") [Doc. 35, Ex. A]. It is worth noting that FOK and DC Vans continue to do business pursuant to the Dealer Agreement.

Plaintiffs allege that eventually the DaimlerChrysler Executive Automotive Committee decided that the Sprinter van would also be sold through Dodge dealers as a Dodge product. In a July 19, 2002 letter, the president of FLLC advised FOK and other Sprinter dealers of this decision concerning Dodge dealers and that Freightliner dealers would likely not be permitted to sell Sprinter vans after 2005 [Doc. 35, Ex. C]. The letter further states:

> You will continue to have full access to the Freightliner Sprinter vehicles. Until the final transition is made, Freightliner will continue to support all of your parts requirements.
>
> I recognize that you will see this development as unwelcome and contrary to your interests.... I am acutely aware of the investments that you have made in support of this product, and the obligations you have assumed to our mutual customers.
>
> I want you to know that Freightliner, LLC will treat its dealers fairly and will recognize the effort and financial resources expended in the representation of the Sprinter product.

[*Id.*]

The plaintiffs claim that they have been damaged by the decision of DC Vans to sell Sprinter products through Dodge dealers and by the anticipated withdrawal of the product from Freightliner dealers. Plaintiffs claim that the Dodge dealers were able to offer the Sprinter vans to the public at a significantly lower price than FOK.

Following completion of the briefing and after hearing the arguments of counsel, DC Vans submitted a supplement to the record to inform the Court of recent developments [Doc. 57]. In particular, DC Vans submitted the affidavit of Jaime Cohen, the Senior Manager for Dealer Commercial Sales Development for DC Vans [Doc. 57–2]. Mr. Cohen states that DC Vans recently decided it would continue

distributing the Freightliner Sprinter line make of motor vehicles and continue its business relationships with its dealers, including FOK, under the conditions set forth in their respective dealer agreements. These decisions were memorialized in notices dated April 10, 2006, that were delivered by certified mail to all Freightliner Sprinter dealers, including FOK. The April 10, 2006 notices further advised that DC Vans shortly would be delivering extension agreements to the current dealer agreements, and new dealer agreements with respect to the 2007 model of the Freightliner Sprinter. [*Id.* at ¶ 5.]

## II. The Amended Complaint

The Amended Complaint [Doc. 35], filed October 11, 2005, asserts a total of eleven claims against the defendants, some against both defendants and some only against DC Vans. Count I alleges that DC Vans breached the Dealer Agreement for distributing the Sprinter van through Dodge dealerships. Count II seeks a rescission of the Release for all pre-contract actions of FLLC and DC Vans for failure of consideration. Count III alleges a breach of the implied duty of good faith and fair dealing against DC Vans. Count IV asserts a claim of misrepresentation against FLLC and DC Vans. Count V asserts a claim of negligent misrepresentation against FLLC and DC Vans. Count VI asserts a claim of promissory fraud against DC Vans. Count VII asserts a violation of Tenn.Code Ann. § 47–25–1302 against DC Vans for changing competitive circumstances. Count VIII asserts a violation of Tenn.Code Ann. § 47–25–1302 against DC Vans for constructive termination of the Dealer Agreement. Count IX asserts a violation of Tenn.Code Ann. § 47–25–1302 for permanent injunctive relief against DC Vans. Count X requests enforcement of the Dealer Agreement and/or Release as modified against both defendants. Finally, Count XI asserts a

violation of the Robinson–Patman Act against DC Vans.

## III. Plaintiffs' Motion to Strike DC Vans's Notice of Supplemental Authority

On November 14, 2005, plaintiffs moved to strike [Doc. 44] the notice of supplemental authority filed by DC Vans [Doc. 42] on November 4, 2005. The supplemental authority consists of an order issued by the United States District Court for the Northern District of Georgia on October 28, 2005, in a similar case styled *Freightliner of Chattanooga, LLC v. DaimlerChrysler Vans, LLC,* No. 4:05–CV–146–HLM. The plaintiffs argue that DC Vans's reliance on the Georgia case is contrary to the provision in the Dealer Agreement that any disagreement is unique to its facts and, moreover, that the Georgia court's ruling is erroneous. In response [Doc. 48], DC Vans contends that the plaintiffs have presented no real cause for striking the Georgia court's decision from the record and further contends that the decision deserves due consideration.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "any redundant, immaterial, impertinent or scandalous matter" from any pleading. Generally, motions to strike are disfavored and will be denied unless the allegations have "no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed.2004). *See Overnite Transp. Co. v. International Bhd. of Teamsters,* 168 F.Supp.2d 826, 850 (W.D.Tenn.2001) ("Motions to strike are disfavored remedies to be used sparingly only when the ends of justice requires it."). Where doubt exists as to whether the mat-

ter to be stricken raises an issue of fact or law, the motion should be denied. 5C Wright & Miller, *supra* at § 1382. The Sixth Circuit has explained the general approach to striking pleadings as follows:

> Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

*Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953) (internal citations omitted).

Based on these principles, the Court agrees with DC Vans that plaintiffs have not presented a sufficient reason to support the extraordinary remedy of striking the supplemental authority. The Court further notes that, since the filing of plaintiffs' motion to strike, both plaintiffs and defendants have submitted several notices of supplemental authority. Accordingly, plaintiffs' motion to strike [Doc. 44] will be **DENIED.**

## IV. The Motions to Dismiss

### A. *Freightliner LLC's Motion to Dismiss Amended and Restated Complaint*

FLLC moves to dismiss Counts II, IV, V, and X of the Amended Complaint, *i.e.,* the only claims asserted against FLLC.[1] FLLC argues first that plaintiffs' claims are barred by multiple releases in favor of FLLC. FLLC also argues that the misrepresentation, negligent misrepresentation, and promissory fraud claims are not set forth with particularity and otherwise fail

to state a claim upon which relief may be granted. Finally, FLLC argues that the plaintiffs' claim for enforcement of the agreements as modified fails to state a claim upon which relief may be granted.

### B. *DC Vans's Motion to Dismiss the Amended and Restated Complaint*

DC Vans moves to dismiss the amended complaint on the grounds that plaintiffs improperly seek to hold DC Vans liable for conduct that was expressly and unambiguously authorized by a written, fully integrated Dealer Agreement between the parties and for conduct that plaintiff released both in the integration clause in the Dealer Agreement and in a separate written Release.

Because all of the counts in the Amended Complaint are asserted against DC Vans and only some of the counts are also asserted against FLLC, the Court will address each count and the respective arguments raised in an effort to streamline the analysis.

### C. *Standard of Review*

 A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.

---

1. FLLC also moves to dismiss Count VI, the claim for promissory fraud. However, as discussed *infra,* a plain reading of the Amended Complaint indicates that this claim was not asserted against FLLC.

1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### D. *Count I—Breach of Contract*

Count I of the Amended Complaint alleges that DC Vans breached the Dealer Agreement by: (i) seeking to implement an alternative distribution system for Sprinter products; (ii) implementing an alternative distribution system for Sprinter products, which materially changed the competitive circumstances of FOK's retail agreement; (iii) allowing competing Dodge dealerships incentives that enabled the Dodge dealers to discount the price of Sprinter products without offering FOK similar incentives; (iv) directly or indirectly dual-branding the Sprinter product; (v) offering the Dodge Sprinter product on terms more favorable to potential customers than the Freightliner Sprinter product; (vi) destroying customer confidence in Freightliner Sprinter products by publicly announcing that the Freightliner product would be withdrawn from the market and would no longer be available to FOK and other dealers similarly situated, thereby destroying the value of the Dealer Agreement and eliminating the fruits of the Dealer Agreement; and (vii) allowing and authorizing the sale or distribution of the "Contract Goods" in FOK's area of responsibility in derogation of the express terms of the Dealer Agreement, or by directly distributing the "Contract Goods" in FOK's area of responsibility in derogation of the express terms of the Dealer Agreement. [Doc. 35 at ¶ 61.]

DC Vans argues that the Dealer Agreement expressly and unambiguously author-ized distribution of Sprinter vans through other dealers by DC Vans or by other DaimlerChrysler entities. Defendant characterizes the plaintiffs' position as follows: although the Dealer Agreement states that FOK is appointed as a "non-exclusive" dealer, the Dealer Agreement actually means that FOK is appointed as an exclusive dealer.

DC Vans relies on the following provisions of the Dealer Agreement in support of its position:

3.1(2) DISTRIBUTOR [DC Vans] hereby appoints DEALER [FOK], and DEALER hereby accepts the appointment, subject to the terms and conditions of this Agreement, to be a *non-exclusive dealer* for the sale and service of Contract Goods. . . .

3.3 DISTRIBUTOR [DC Vans], on its own behalf and on behalf of all other DaimlerChrysler Group Companies, and their respective successors and assigns (by purchase, merger or otherwise) retains all rights and discretion with respect to the manufacture, distribution, sale and service of motor vehicles, and the right to engage in any other business anywhere in the world, including the rights . . . (b) *to appoint other dealers in the Primary Market Area on terms and conditions deemed appropriate;* and (c) to distribute, sell and service any other motor vehicles, whether passenger or commercial vehicles, in the Primary Market Area on such terms and conditions deemed appropriate.

3.4 DEALER [FOK] shall not, without DISTRIBUTOR'S [DC Vans] prior consent, directly or indirectly, sell or offer or arrange for sale of any new motor vehicles of any brand, other than the Vehicles, from any Authorized Locations.

4.1 . . . *DEALER [FOK] agrees that it has no rights or property interests in*

*the Primary Market Area or in any other geographic area which DISTRIBUTOR may designate from time to time and that DISTRIBUTOR may add, relocate or replace other authorized dealers in the Primary Market Area from time to time.*

9.13 *DISTRIBUTOR [DC Vans] and its manufacturer may discontinue the manufacture, importation or distribution of Vehicles at any time without any obligation or liability to DEALER* by reason thereof.

12.2(5) DEALER [FOK] acknowledges and agrees that: (i) this Agreement does not, directly or indirectly, grant DEALER any right to sell or service any product of any DaimlerChrysler Group Company, except for the Contract Goods....

[Doc. 35, Ex. B (emphases added).]

Plaintiffs respond that the provisions of Tenn.Code Ann. § 47–25–1301 *et seq.*, amend the above-cited provisions of the Dealer Agreement because the Agreement must be construed according to Tennessee law. Plaintiffs rely on section 16.5 of the Dealer Agreement for this argument, which states in pertinent part:

... If any applicable dealer law requires a greater prior notice of the termination of this Agreement, a different standard of "good cause", or the taking of some other action not required hereunder, then the prior notice, "good cause" standard and/or other action required by such law shall be substituted for the comparable provisions hereof.

[Doc. 35, Ex. B.] Thus, plaintiffs contend that sections 3.3, 4.1, and 9.13 are amended by the "dealer law" of Tenn.Code Ann. § 47–25–1301 *et seq.* and that DC Vans cannot terminate the Dealer Agreement except for good cause and cannot substantially change the competitive circumstances under which FOK operates to the detriment of FOK.

The Court rejects this argument because section 18(1) of the Dealer Agreement plainly states that the Agreement "shall be construed under the laws of the State of Delaware" without waiving FOK's rights under the law of another state. [*Id.*] The Agreement further provides that "in the event of any conflict of law, Delaware law will prevail." [*Id.*] Delaware law provides that the plain language of a written contract will be given its plain meaning. *Phillips Home Builders, Inc. v. The Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997). Even assuming the Court were to accept the suggestion that Tenn.Code Ann. § 47–25–1301, the Tennessee statute on Repurchase of Terminated Franchise Inventory, could be considered "dealer law" that must be incorporated into the Dealer Agreement, the Court is not cognizant of any authority allowing that dealer law to circumvent the plain language of the Dealer Agreement allowing DC Vans to do what the parties agreed that it could do.

Again, as provided in section 3.1(2), the parties agreed that FOK would be a non-exclusive dealer for the sale and service of Sprinter vans. Logically, this provision means that other entities may also have the right to sell and service Sprinter vans. Similarly, in section 3.3, the parties agreed that DC Vans and any other DaimlerChrysler entities retained the rights to manufacture, distribute, and sell motor vehicles, including the right to appoint other dealers in FOK's market area. Thus, DC Vans reserved the right to sell any motor vehicle and to sell such vehicles through dealers within FOK's market area. In section 4.1, FOK further agreed that it had no rights in the market area and that DC Vans could add other dealers to the market area at any time. In section 9.13, the parties agreed that DC Vans could stop manufacturing or distributing Sprinter vans at any time. Finally, in sections 3.4 and 12.2(5), FOK agreed that it would not

sell any other motor vehicles of any brand without DC Vans's prior consent and that it had no rights to any DaimlerChrysler products except for the Sprinter vans. Accordingly, the plain language of these provisions allows DC Vans to sell Sprinter vans through other dealers within FOK's market area, to cease the distribution of Sprinter vans at any time, and to sell any other DaimlerChrysler products within the market area. The plain language of the Dealer Agreement allows DC Vans to do precisely what it did in this case. It naturally follows that those actions cannot be a breach of contract.

In further support of its breach of contract argument, plaintiffs maintain that the Dealer Agreement is ambiguous because it references both "contract goods" and "vehicles" in specific reference to the Sprinter van, but also generically refers to "motor vehicles," which is not defined. Similarly, plaintiffs note that the term "non-exclusive" is not defined by the Dealer Agreement. The plaintiffs argue that, after appointing FOK as a "non-exclusive" dealer of "contract goods" in section 3.1, DC Vans retains the right to distribute, sell and service any other "motor vehicles" in section 3.3. Thus, plaintiffs contend that DC Vans retained all rights with regard to "motor vehicles" but not "contract goods."

The Court, however, cannot make such an inferential leap. The Dealer Agreement specifically defines "contract goods" because those are the items in which FOK is given certain non-exclusive rights. FOK is given the non-exclusive right to sell the Sprinter vans, but not rights as to the sale of other motor vehicles. DC Vans, pursuant to section 3.3, "retains all rights and discretion with respect to the manufacture, distribution, sale and service of motor vehicles . . . ." To embrace plaintiffs' argument would require the Court to read into this provision a limitation on the term "motor vehicles" such that it means "motor

vehicles except for contract goods." Such an interpretation is not warranted based on the plain, common sense language of the Dealer Agreement.

Plaintiffs also argue that sections 3.3 and 4.1 conflict if interpreted as DC Vans suggests. Instead, plaintiffs contend that section 3.3 only grants DC Vans the right to appoint other dealers to sell motor vehicles other than the contract goods unless FOK's contractual rights have been extinguished. In support of this interpretation, plaintiffs point to section 15.3(xi), which identifies the rights and obligations on termination or expiration of the Dealer Agreement, and provides:

> DISTRIBUTOR shall have the unrestricted right, without payment of any consideration to DEALER, to sell and service, and to authorize other dealers to sell and service, Contract Goods to customers or prospective customers of DEALER.

[Doc. 35, Ex. B.] Thus, plaintiffs argue that DC Vans can only "add, relocate or replace" an authorized dealer within FOK's market area pursuant to section 4.1 after FOK's rights have been terminated.

After carefully analyzing the cited provisions, the Court cannot construe the Dealer Agreement as plaintiffs suggest. Section 3.3(b) allows DC Vans "to appoint other dealers in the Primary Market Area on terms and conditions deemed appropriate" without limitation. Similarly, section 4.1 provides that DC Vans "may add, relocate or replace other authorized dealers in the Primary Market Area from time to time" without limitation. There is no basis whatsoever in the plain language of the contract to limit these provisions as plaintiffs suggest. Instead, these provisions clearly allow DC Vans to add authorized dealers to FOK's market area during the term of the non-exclusive contract. Section 15.3(xi) simply reserves to DC Vans

the right to sell Sprinter vans to customers or prospective customers of FOK upon termination of the Dealer Agreement. The Court does not find that these provisions are inconsistent or in conflict with each other.

Next, plaintiffs argue that DC Vans's reliance on section 9.13 should be "disregarded" for two reasons. First, plaintiffs contend that section 9.13 conflicts with Tenn.Code Ann. § 47–25–1301. As discussed *infra*, the Court does not find that this statutory provision is applicable to the present case. Second, plaintiffs argue that section 9.13 refers to a "global and uniform" decision to stop distributing the Sprinter vans and that DC Vans has not made such a decision, suggesting instead that DC Vans has made an isolated decision to halt distribution on a case by case basis. However, the language of section 9.13 is not so limited because it does provide DC Vans with the right to discontinue the manufacture, importation, or distribution of Sprinter vans at any time without limitation. The fact that DC Vans has not yet exercised this right does not mean it cannot do so or that it has waived that right. Even assuming that section 9.13 could be so construed, DC Vans has not made either a global or a case-specific decision to cease distribution of Sprinter vans to FOK. Indeed, as noted above, DC Vans has recently notified FOK of its intent to continue to distribute the Sprinter products through FOK and other Freightliner dealers.

For all of these reasons, the Court finds that the Dealer Agreement is unambiguous, and plaintiffs' claim for breach of contract should be dismissed.

E. *Count II—Rescission of the Release*

Count II of the Amended Complaint seeks rescission of the Sprinter Release for all pre-contract actions of FLLC and DC Vans and alleges as follows:

Because of the deliberate conduct of DC Vans in breaching the *Dealer Agreement,* FOK has not received the benefits for which it bargained to such a substantial degree that the consideration for the *Release* has failed, in whole or in part, and the *Release* should be declared null and void, if necessary, as a part of a rescission of the entire transaction as set forth hereinafter.

[Doc. 35 at ¶ 68.] Count II further alleges that DC Vans obtained the Sprinter Release by misrepresentation or fraud and that therefore the Release should be rescinded. [*Id.* at ¶ 69.]

DC Vans points to the language of the Sprinter Release which states that "RELEASOR [FOK] further agrees that it may not rescind or otherwise seek to cancel or set aside this RELEASE or any provision hereof by reason of any subsequently discovered facts." [Doc. 35, Ex. A.] DC Vans contends that it relied upon this promise in granting FOK the Dealer Agreement. DC Vans argues that the failure of consideration argument does not square with the well-settled principle under both Delaware and Tennessee law that a "peppercorn" is all that is needed to support a contract and that the Dealer Agreement was far more than sufficient consideration. *See Haft v. Dart Group Corp.,* 1994 WL 643185, at *2 (Del.Ch. Nov.14, 1994); *Smith v. Riley,* 2002 WL 122917, at *3 (Tenn.Ct.App. Jan.30, 2002). Finally, DC Vans argues that the fraudulent inducement theory is foreclosed by the language of the Sprinter Release which states that FOK "has not been influenced in any manner or to any extent whatsoever by any representations, statements, actions or conduct on the part of" FLLC or DC Vans. [Doc. 35, Ex. A.]

Plaintiffs respond that DC Vans is estopped from enforcing this Release because it induced FOK to "trust it" and

therefore FOK lost its opportunity to pursue a claim before the Tennessee Motor Vehicle Commission. Because DC Vans contends that FLLC's letter of July 2002 cannot modify the Sprinter Release or the Dealer Agreement, plaintiffs suggest that they be allowed discovery to determine if FLLC prepared the letter on behalf of DC Vans, at its direction or as an agent for DC Vans, or if DC Vans otherwise participated in generating a writing that provided new terms to the rights upon termination of the dealership. Plaintiffs, in reliance on *Sherman v. American Water Heater Co.*, 50 S.W.3d 455, 460 (Tenn. Ct.App.2001), contend that it is not a foregone conclusion that the Release effectively releases all of the claims pled in this action without consideration of the intent of the parties.

DC Vans replies that, even if FLLC could somehow bind DC Vans, the FLLC letter would hardly qualify as a modification of the Sprinter Release. The Release specifically states:

> *Amendments Must be in Writing and Signed.* This RELEASE may not be amended, modified, or altered in any manner or to any extent except in a written instrument, expressly stating that it is an amendment to this RELEASE, duly executed by the party or parties to be charged with such amendment, modification or alteration.

[Doc. 35, Ex. A.] DC Vans argues that FLLC's letter did not state that it was an amendment to the Release, nor was it signed by authorized representatives of either DC Vans or plaintiffs.

 The Court agrees with DC Vans. The Sprinter Release was effective October 10, 2001. By its plain terms, FOK agreed that it would not rescind or otherwise seek to cancel or set aside the Release on the basis of any subsequently discovered facts. Thus, the July 2002 letter, as a subsequently discovered fact,

could not be used as a basis to rescind the Release. Moreover, the consideration for the Release, as specifically stated, was the grant of the Dealer Agreement to FOK and pursuant to which FOK and DC Vans have conducted business from that point to the present. The Sprinter Release is therefore supported by sufficient consideration. *Fox v. Rodel, Inc.*, 1999 WL 588293 at *8 (D.Del. July 14, 1999) ("If the consideration has any value whatsoever, it is sufficient to support the promise and render it enforceable."); *Doe v. HCA Health Services of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn.2001). Plaintiffs simply cannot show under any scenario that there has been a failure of consideration for the Release, and this claim against DC Vans should be dismissed.

With respect to plaintiffs' claim against FLLC, FLLC argues that it was the granting of contract rights, through the Dealer Agreement, that provided the necessary consideration for the Sprinter Release, not the later performance of the obligations under the Dealer Agreement as plaintiffs contend. Thus, according to FLLC, DC Vans's alleged breach of the terms of the Dealer Agreement does not result in a lack of consideration for the original grant of the Release. Relying on case law from other jurisdictions, FLLC argues that there must be a total failure of consideration, not merely a partial failure, for a release to be rescinded. FLLC also emphasizes that the Amended Complaint alleges that FOK acted as a Sprinter dealer and provided products and service from September 2001 until at least July 19, 2002. Hence, there was not a complete failure to perform by DC Vans. As for the failure of consideration due to alleged fraud, FLLC argues that rescission for fraud must be undertaken as soon as the defrauded party knows of facts constituting the fraud. Because plaintiffs knew of the alleged falsity by July 2002 and yet

continued as a Sprinter dealer for nearly three more years, FLLC contends that plaintiffs cannot obtain rescission of the Release under such circumstances.

Plaintiffs, however, argue that FLLC cannot rely on the Sprinter Release because: (i) Carroll Properties did not sign the Sprinter Release and neither the terms of the Release nor extrinsic facts bind Carroll Properties to the Sprinter Release; (ii) FLLC waived its rights under the Sprinter Release; (iii) FLLC is estopped from relying on the Sprinter Release; (iv) the Sprinter Release, by its terms, does not release all of the plaintiffs' claims; and (v) the Sprinter Release is unenforceable for failure of consideration or misrepresentation.

In reply, FLLC contends that although Carroll Properties did not sign the Sprinter Release, it was signed by Buddie Carroll as an agent for FOK. FLLC contends that Carroll Properties was an agent of FOK for the purpose of obtaining a facility for the Sprinter dealership. As to plaintiffs' waiver and estoppel arguments, FLLC responds that the remarks of Freightliner's president made a year after the execution of the Sprinter Release cannot affect the enforceability of the Release and the letter expresses no intention to waive the benefits of the Release. As to the misrepresentation argument, FLLC argues that, as set forth in its initial brief, the Dealer Agreement signed by FOK explicitly permitted DC Vans to sell its products through other dealers and any allegation that the plaintiffs were not told of this possibility cannot be fraudulent. Additionally, FLLC argues that plaintiffs' reliance on *Sherman*, a Tennessee case, is misplaced because the Sprinter Release is governed by Delaware law rather than Tennessee law and also because the plaintiffs cannot show that their claims were fully or partially in existence at the time the Sprinter Release was executed. Final-

ly, FLLC argues that the consideration for the Sprinter release was the Dealer Agreement with DC Vans.

■ The Court agrees with FLLC on this claim. FLLC simply cannot be found to have waived its rights under the Sprinter Release based on a letter from Freightliner's president nearly nine months later, nor could such a letter affect the enforceability of a Release that plainly states it cannot be rescinded based on subsequently discovered facts. As noted above, plaintiffs received sufficient consideration for the execution of the Release, and plaintiffs' argument regarding *Sherman* is not persuasive. Finally, plaintiffs have presented no authority for the proposition that Carroll Properties, who was not a party to the Sprinter Release, can nevertheless have the Release rescinded.

Even assuming that the Sprinter Release was not effective to bar plaintiffs' claims against FLLC, FOK executed a new Freightliner Sales Agreement with FLLC on June 2, 2003. [Doc. 10–3.] At the same time, FOK signed sales agreements with two of Freightliner's subsidiaries, Sterling Truck Corporation and Western Star Truck Sales, Inc. These sales agreements contain a release of claims whereby FOK released all claims against Freightliner, Sterling, and Western Star as follows:

> Upon execution of this Agreement by DEALER, and in consideration of COMPANY entering into this Agreement, DEALER and its owners, members, officers and directors, hereby unconditionally release COMPANY and any of its affiliates ... from any and all claims, demands, and liabilities (including, but not limited to statutory liabilities) which are known or which in the exercise of reasonable care should be known, *of any kind whatsoever, arising out of or in connection with any prior agreements,*

*business transactions, course of dealing, discussions or negotiations between the parties prior to the effective date hereof.* [Doc. 10–3 at ¶ XVIII(M); Doc. 10–5 at ¶ XVIII(M); Doc. 10–6 at ¶ XVIII(M) (emphasis added).] Thus, as of June 2003, FOK had released FLLC from any claims related to any prior business transactions, including the Sprinter dealership. Accordingly, for all of these reasons, the Court finds that this claim against FLLC should be dismissed.

F. *Count III—Breach of the Implied Duty of Good Faith and Fair Dealing*

Count III of the Amended Complaint asserts a claim for breach of the implied duty of good faith and fair dealing against DC Vans as follows:

> ... DC Vans has breached its duty of good faith and fair dealing in performing its contract: (i) by promptly seeking an alternative distribution system for the Sprinter van product; (ii) by instituting an alternative distribution system for the Sprinter van product, which materially changed the competitive circumstances of FOK's dealer agreement; (iii) by offering competing Dodge dealerships incentives that enabled the Dodge dealers to discount the price of the Sprinter product without offering FOK similar incentives; (iv) by dual-branding the Sprinter product; (v) by offering the Dodge Sprinter product on terms more favorable to potential customers than the Freightliner Sprinter product; (vi) by advising that the Freightliner product would be withdrawn from the market and no longer available to FOK, in derogation of the terms of the *Dealer Agreement* as governed by Tennessee statute.

[Doc. 35 at ¶ 72.]

■ DC Vans argues that this claim is foreclosed by both Delaware and Tennessee law, which hold that a claim for breach of the implied covenant of good faith and fair dealing cannot be based on conduct authorized by the contract. *See Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992–94 (Del.1998); *Brock v. Provident Life & Accident Ins. Co.*, 1996 WL 134943, at *6 (Tenn.Ct.App. Mar.27, 1996). DC Vans further argues that the implied covenant cannot modify the existing terms of a contract. As noted in DC Vans's reply brief, the plaintiffs have not responded to this argument.

The Court agrees. Because the terms of the Dealer Agreement expressly permit DC Vans to take the actions it did, the Court cannot and will not imply contradictory terms. This claim will therefore be dismissed.

G. *Count IV—Misrepresentation*

*Count V—Negligent Misrepresentation*

Count IV asserts a claim of misrepresentation against both DC Vans and FLLC as follows:

> DC Vans and FLLC have misrepresented the situation regarding the Freightliner Sprinter van and the prospects for a Freightliner dealer thereof by describing the dealership opportunity in a manner that was not correct at the time, or sometime between February, 2000 and July, 2001, had become incorrect. The Defendants knew that the description, upon which the Plaintiffs reasonably relied to their detriment and loss, was incorrect, in that it omitted material facts, such as the "Freightliner Sprinter" would be or would possibly be phased out so soon that FLLC was not protecting its intellectual property rights to it, and DC Vans was not getting an assignment of the wordmark, "Freightliner Sprinter." The description omitted the fact that DaimlerChrysler, AG was obtaining intellectual prop-

erty rights for a "Sprinter," not a "Freightliner Sprinter." The description overall indicated a long term opportunity for FOK to sell Freightliner Sprinters, and that long-term opportunity did not exist and FLLC knew that from February, 2000, or both Defendants knew that later. DC Vans, in its dealings, perpetuated the impression that the dealership arrangement would be the standard arrangement FOK had obtained in years past, DC Vans had the opportunity to give a full and accurate picture of the opportunity presented and DC Vans choose [sic] to give a partial and inaccurate picture of the opportunity. These facts, including the existence of any plan, discussions, or purpose to distribute the Sprinter product through any network other than the Freightliner dealer network, were apparent and known by the Defendants, or could have been discovered by the exercise of reasonable care, and each Defendant knew that the beliefs and impressions created by their collective representations and relied upon by the Plaintiffs were false and inaccurate.

[Doc. 35 at ¶ 82.] Count V asserts a claim of negligent misrepresentation against DC Vans and FLLC as follows:

DC Vans and FLLC had a pecuniary interest in the FOK dealership transaction and both Defendants were in the business of distributing vehicles through dealerships at the time. DC Vans and FLLC have supplied false information to the Plaintiffs in the guidance of their obtaining the Freightliner Sprinter van dealership, upon which the Plaintiffs have justifiably relied, and the Defendants failed to exercise reasonable care or competence in communicating entire facts, the true facts situation regarding the Sprinter van. These facts, including the existence of any plan, discussions, or purpose to distribute the Sprinter product through any network

other than the Freightliner dealer network, were apparent and known by the Defendants, or could have been discovered by the exercise of reasonable care, and each Defendant knew that the beliefs and impressions created by their collective representations and relied upon by the Plaintiffs were false and inaccurate.

[*Id.* at ¶ 86.]

DC Vans characterizes these claims as ones in which plaintiffs were "surprised" to learn that FOK did not have exclusive rights under a non-exclusive Dealer Agreement. Once again, DC Vans argues that these claims are barred by the express terms of both the Sprinter Release and Dealer Agreement. DC Vans first directs the Court's attention to the language of the Release in which FOK releases DC Vans from "any and all claims . . . relating to [FOK's] sales and service of the Sprinter utility vans." [Doc. 35, Ex. A.] DC Vans also emphasizes that the Sprinter Release was executed after the alleged conduct giving rise to the misrepresentation claims occurred and therefore forecloses those claims. DC Vans also relies on the integration clause of the Dealer Agreement as foreclosing these claims:

This Agreement constitutes the Parties' entire agreement relating to selling and servicing Contract Goods. . . . DEALER [FOK] acknowledges that no representations or statements, other than those expressly set forth herein, were made by DISTRIBUTOR [DC Vans] or any other DaimlerChrysler Group Company or any of their respective officers, employees, agents or representatives in connection with, or were relied upon by DEALER in entering into, this Agreement.

[Doc. 35, Ex. B at § 16.1(1).] Because the Dealer Agreement was completely integrated, DC Vans argues that plaintiffs cannot rely on parol representations or prom-

ises within the scope of the contract made prior to its execution. DC Vans contends that the misrepresentation claims are barred by the parol evidence rule because the Dealer Agreement is unambiguous and the Court should not look to evidence outside of the Agreement to determine the parties' obligations to one another. Finally, DC Vans argues that the negligent misrepresentation claim is foreclosed by the economic loss doctrine such that parties in privity should look to their contract for remedies rather than asserting tort claims.

In response, plaintiffs argue that the parol evidence rule does not apply to allegations of fraudulent misrepresentation inducing a party to enter into contract because promissory fraud sounds in tort. Plaintiffs rely on *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 568 (6th Cir.2003), for the proposition that whether it was reasonable for a plaintiff to rely upon oral statements not contained in a totally integrated contract is a question of fact.

In reply, DC Vans contends that *Shah* did not deny that an integration clause is an important factor in evaluating whether a party could reasonably rely on a purported misstatement. In *Shah*, the Sixth Circuit also relied on earlier precedent, *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 612 (6th Cir.2001), for the proposition that with a completely integrated written contract, it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution. DC Vans contends that the Dealer Agreement was replete with clear language stating that it was a non-exclusive contract and this language, together with the integration clause, bars any claim that plaintiffs were misled to believe that FOK had exclusive rights under the Dealer Agreement.

Additionally, FLLC argues that plaintiffs have not satisfied the requirements of Rule 9 with respect to these claims. FLLC contends that the Amended Complaint does not allege specific affirmative misrepresentations on the part of Freightliner and DC Vans, but rather contains general allegations that defendants knew in Summer 2001 that plans were underway to phase out the Freightliner Sprinter and to distribute the Sprinter through Dodge, and that DC Vans and Freightliner omitted material facts which, if known, would have affected plaintiffs' decisions regarding the Freightliner Sprinter franchise. FLLC also contends that plaintiffs cannot state a claim for fraud by omission because there was no fiduciary relationship between the plaintiffs and the defendants. FLLC argues that plaintiffs have not pled a valid claim of misrepresentation based on statements by Freightliner at the February 2000 meeting, statements by DC Vans in August and September 2001, or the statements in the July 19, 2002 letter from FLLC. FLLC further argues that there can be no reasonable reliance by plaintiffs when the Dealer Agreement disclosed DC Vans's right to sell through other dealers and when the integration clause disclaimed reliance.

In response, plaintiffs contend that they have provided sufficient detail of the alleged misrepresentations. Plaintiffs also suggest that the Court should consider the standard course of dealing in the motor vehicle distribution industry with respect to these misrepresentation claims. Plaintiffs contend that at the February 2000 meeting, FLLC presented the Sprinter as a great product with a lot of potential but failed to disclose the fact that the dealership would operate like no other dealership. Plaintiffs argue that FLLC knew it was creating a false impression of the dealership, yet did not correct it.

In reply, FLLC points out that plaintiffs do not address any alleged misrepresentations other than the February 2000 meeting. FLLC further argues that there can be no fraud by implication, *i.e.*, plaintiffs' allegations as to what was inferred rather that what was actually said in the February 2000 meeting. FLLC reiterates the argument that plaintiffs cannot satisfy the elements of a claim for fraud by omission because the cases relied upon by plaintiffs are not applicable to the present dispute.

■ Fed.R.Civ.P. 9(b) requires that all allegations of fraud or mistake "be stated with particularity." The Sixth Circuit has interpreted this rule to require a plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States v. Community Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)). Moreover, "[a] complaint 'may not rely upon blanket references to acts or omissions by all of the "defendants," for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" *Id.* (quoting *Benoay v. Decker*, 517 F.Supp. 490, 493 (E.D.Mich.1981)).

■ In response to FLLC's motion to dismiss, plaintiffs contend that several paragraphs of the amended complaint contain sufficient detail of the alleged misrepresentations [*see* Doc. 43 at pp. 6–8 (citing Doc. 35 at ¶¶ 12, 13, 17, 18, 19, 21, 23, 28, 29, 31, 33) ]. The Court has carefully reviewed these paragraphs along with the other allegations within the Amended Complaint, particularly those in Counts IV and V. Most of those allegations are indeed conclusory. The only identified date of an alleged misrepresentation is the February 2000 meeting with FLLC representatives. There is no "fraudulent scheme" identified. The only allegations that come close to identifying a specific misrepresentation are: "All of FLLC's representations were explicitly designed to create the well-founded belief and unmistakable impression that the Sprinter would be sold in the United States exclusively through Freightliner dealers"; "FLLC had made it clear that only select authorized Freightliner dealers had been invited to sell the Sprinter Van"; and "It [DC Vans] parroted and confirmed the distinct impression of exclusivity fostered by FLLC's representations." [Doc. 35 at ¶¶ 18, 19, 28.] These allegations do not assert that a misrepresentation was made. Instead, they assert the "impressions" that plaintiffs received from the remarks that were made. The Amended Complaint is remarkably silent as to any allegation of an explicit representation regarding the exclusivity of the Sprinter franchise. If such an express representation had in fact been made, plaintiffs most certainly would have included it in their lengthy and comprehensive pleading. The Court therefore finds that plaintiffs have failed to allege fraud with sufficient particularity as required by Sixth Circuit case law and Rule 9(b).

■ Even assuming that plaintiffs had alleged a misrepresentation with sufficient particularity, plaintiffs' reliance on such a statement cannot survive the following express language of the Sprinter Release:

RELEASOR [FOK] represents that in executing this Release, it has had the opportunity to receive independent legal advice ... and it has not been influenced in any manner or to any extent whatsoever by any representations, statements, actions or conduct on the part of RELEASEES [FLLC and DC Vans] or by the agents or representatives for RELEASEES. Accordingly,

RELEASOR hereby assumes the risk that there may exist facts which it does not know and, if known, would have caused it not to have signed this RE-LEASE.

[Doc. 35, Ex. A at ¶ 2.] The Sprinter Release was effective as of October 10, 2001. Thus, as of that date, FOK specifically agreed that it had not been influenced by any representations or statements of the defendants, such as the "impressions" given at the February 2000 meeting, and further assumed the risk that facts unknown to it would have caused FOK not to sign the release, such as the possibility that the Freightliner Sprinter could be phased out or that the product would also be sold through Dodge dealers.

Plaintiffs' reliance on any such misrepresentations is also precluded by the language of the Dealer Agreement that FOK will be a non-exclusive dealer, that the Agreement will expire on October 12, 2005, and that either party may terminate the Agreement with sufficient written notice. [*See* Doc. 35, Ex. B at §§ 3.1(2), 15.1, 15.2(1).] Thus, the Court finds that FOK, a sophisticated and experienced Freightliner dealer, and Mr. Carroll, an experienced businessman, were cognizant of the express language of these documents and their consequences. Despite any "impressions" given by FLLC or DC Vans, the Sprinter Release and the Dealer Agreement gave clear notice that the parties were agreeing to a non-exclusive dealership for a specific term and that any previous representations or statements by the defendants were not binding.

Moreover, because plaintiffs have not alleged a particular misrepresentation, they cannot state a claim for fraud on this basis. The basic elements for a fraud [2] action are: (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation falsity-that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact. *Carter v. Patrick,* 163 S.W.3d 69, 77 (Tenn.Ct. App.2004) (quoting *Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn.Ct.App.1990)). As noted earlier, plaintiffs have failed to allege a specific misrepresentation by either defendant.

Also as noted previously, the parties have discussed the application of *Shah* to the present case, in particular the holding that "there is no rule that a merger clause makes reliance on oral representations unreasonable *per se* so as to necessarily defeat a fraudulent inducement or promissory fraud claim." *Shah,* 338 F.3d at 568. The Court need not reach this issue because *Shah* is factually distinguishable from the present case. In *Shah,* the plaintiffs were repeatedly told by the defendant that the 30–day termination clause would not be used as long as plaintiffs operated the business satisfactorily. These were specific statements made to the plaintiffs at specific times by defendants' representatives who knew the statements were false at the time. Moreover, the *Shah* plaintiffs were unsophisticated purchasers who were negotiating a transaction with a savvy corporation. In the present case, plaintiffs have pointed to no specific representation upon which they relied. Furthermore, Mr. Carroll is a sophisticated businessman who has successfully operated a Freightliner dealership for many years. He was engaged in an arms-length

---

**2.** The Tennessee Supreme Court considers the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" to be synonymous. *Concrete Spaces, Inc. v. Sender,* 2 S.W.3d 901, 904 n. 1 (Tenn.1999).

business transaction with another sophisticated party. This Court is not confronted by any great disparity in the bargaining power of these parties as was the court in *Shah.*

Moreover, in order to state a claim for fraud based on a failure to disclose, a plaintiff must show (1) there is a previous definite fiduciary relation between the parties; (2) that one or each of the parties to the contract expressly reposes a trust and confidence in the other; or (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. *Domestic Sewing Mach. Co. v. Jackson,* 83 Tenn. 418, 424–25 (1885); *Sears v. Gregory,* 146 S.W.3d 610, 617 (Tenn.Ct.App.2004); *Shah,* 338 F.3d at 571–72 ("Despite a few outliers, federal courts considering fraudulent concealment under Tennessee law have made clear that *Domestic Sewing* is the governing law."). A distribution agreement such as in the present case does not create a fiduciary relationship. *Shah,* 338 F.3d at 571–72; *O'Neal v. Burger Chef Sys., Inc.,* 860 F.2d 1341, 1349–50 (6th Cir.1988) (franchise agreements do not give rise to fiduciary or confidential relationships). The Dealer Agreement in the present case was an arms-length business transaction between sophisticated business entities. Plaintiffs have failed to show a confidential or fiduciary relationship on which to base a claim for fraud by omission.

With respect to plaintiffs' claim for negligent misrepresentation, Tennessee has recognized this tort under section 552 of the Restatement (Second) of Torts as follows:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions,* is subject to liability for pecuniary loss caused to them by

their justifiable reliance upon the information, if he fails to exercise reasonable care of competence in obtaining or communicating the information.

*Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn.1997) (emphasis in original). Liability in tort will result, despite the lack of contractual privity between the plaintiff and the defendant, when:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information *meant to guide others in their business transactions;* and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Id.* (emphasis in original).

In the present case, plaintiffs have not identified any false information supplied by the defendants. Further, as noted by FLLC, an actionable misrepresentation must consist of a material past or present fact and cannot be based on opinion or conjecture as to future events. *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127, 130 (Tenn.Ct.App.1982); *Brungard v. Caprice Records, Inc.,* 608 S.W.2d 585, 590 (Tenn.Ct.App.1980). Similarly, "puffing or other sales talk is generally not actionable." *McElroy,* 632 S.W.2d at 130. The "impressions" and "representations" upon which plaintiffs rely fall into this category. The statements made concern the quality and potential profitability of the Sprinter van, statements which are more accurately characterized as puffing or opinions rather than past or present fact.

For all of these reasons, the plaintiffs cannot state a claim for intentional or negligent misrepresentation, and these claims will be dismissed.

### H. Count VI—Promissory Fraud

Count VI of the Amended Complaint asserts a claim for promissory fraud against DC Vans[3] as follows:

> Upon information and belief, DC Vans entered into the *Dealer Agreement* without the present intent of performing the terms of the *Dealer Agreement* and/or without the present intent of performing the terms of the *Dealer Agreement* as required by governing state statutes, thereby committing promissory fraud.

[Doc. 35 at ¶ 89.]

DC Vans argues that this claim fails for the same reasons that the misrepresentation claims failed and for the additional reason that DC Vans has performed fully under the Dealer Agreement. In fact, DC Vans points out that plaintiffs make no claim that it failed to meet any of its obligations under the contract, and the Court notes that plaintiffs have not responded to this argument, that is, that DC Vans fully performed under the Dealer Agreement.

■■■ The elements of a claim for promissory fraud are the same as a claim for misrepresentation except for the fourth element—the representation must "embody a promise of future action without the present intention to carry out the promise." *Carter*, 163 S.W.3d at 77. In the present case, plaintiffs have presented no allegation, nor does it appear that they could, that DC Vans has not performed under the Dealer Agreement. Indeed, the parties have continued to do business pursuant to this Agreement from its inception to the present and DC Vans has recently indicated its intent to continue the business relationship into the future. Thus, even if DC Vans did not intend to carry out its promise of performing under the Dealer Agreement at the time of execution, it has in fact done so. This claim will be dismissed.

### I. Count VII—Violation of Tenn.Code Ann. § 47-25-1302—Monetary Damages for Changing Competitive Circumstances

*Count VIII—Violation of Tenn.Code Ann. § 47-25-1302—Monetary Damages for Constructive Termination of the Contract*

*Count IX—Violation of Tenn.Code Ann. § 47-25-1302—Permanent Injunctive Relief*

■■■ Counts VII, VIII, and IX assert claims against DC Vans under Tenn.Code Ann. § 47-25-1302, a statute titled "Repurchase of Terminated Franchise Inventory." Plaintiffs seek monetary damages for changing competitive circumstances, monetary damages for constructive termination of the contract, and permanent injunctive relief.

DC Vans argues that this statute simply does not apply to this case because the Sprinter van is not "industrial equipment." DC Vans also argues that § 47-25-1302 cannot be read as regulating motor vehicles because the Tennessee legislature intended a separate statute, entitled "Motor Vehicle Sales Licenses," "to regulate and to license motor vehicle manufacturers, distributors, dealers, salespersons, and their representatives doing business in Tennessee to prevent frauds, impositions and other abuses." Tenn.Code Ann. § 55-17-101. DC Vans points out that this statute does not provide a private cause of action but rather requires dealers to follow

---

3. FLLC has responded to this claim as if asserted against it. However, the Amended Complaint only mentions DC Vans in Count VI.

an administrative grievance procedure before the Tennessee Motor Vehicles Commission. Thus, DC Vans contends that plaintiffs' argument under § 47–25–1302 would circumvent the grievance procedure before the Tennessee Motor Vehicles Commission as intended by the Tennessee legislature. Finally, DC Vans argues that § 47–25–1302 only applies to retailers who hold excess inventories and FOK has made no allegation that they hold an excess inventory of Sprinter vans.

In response, plaintiffs contend that amendments have redefined the statute to include motor vehicles that are designed to be used as industrial equipment. Plaintiffs point to the description of the Sprinter van as intended for commercial or industrial uses. [Doc. 35, Ex. B at § 2.1(1).] Section 47–25–1301(4) defines "retailer" as one "engaged in the business of selling retailing farm implements and machinery, construction, utility and industrial equipment, outdoor power equipment, attachments of repair parts and shall not include retailers of petroleum products." Because only "retailers of petroleum products" are excluded from the application of this statute, plaintiffs argue that the Tennessee legislature must have intended its definition of "retailer" to be broadly construed. Plaintiffs suggest that petroleum retailers are excluded from the statute because they have the right to bring a private action for damages under a separate statute. *See* Tenn.Code Ann. § 47–25–601 *et seq.* Thus, even if FOK qualifies as a "motor vehicle dealer under § 55–17–102", FOK is not precluded from seeking the protections of § 47–25–1301. Plaintiffs also argue that, because of DC Vans's promises of fair treatment and the return of FOK's lost investments, it should be estopped from arguing that FOK is limited to an administrative remedy when its actions induced FOK to effectively waive this right in the first place. Finally, plaintiffs argue that the 1999 amendments to the statute expand the remedies beyond the repurchase of inventory to address specific violations by a supplier. *See* Tenn.Code Ann. § 47–25–1302 ("No supplier ... may terminate, cancel, fail to renew or substantially change the competitive circumstances ...").

In reply, DC Vans argues that no court has applied § 47–25–1302 to vans, cars, or other motor vehicles. DC Vans again argues that such a holding would unfairly subject motor vehicle franchisors to two sets of statutory obligations and allow them to avoid the administrative procedure before the Tennessee Motor Vehicles Commission, contrary to legislative intent. DC Vans contends that the statutory exception for petroleum retailers does not demonstrate that the legislature needed to provide exceptions for each type of retailer not covered. Instead, the definition of "inventory"—"farm implements and machinery, construction, utility and industrial equipment, consumer products, outdoor power equipment, attachments and repair parts"—demonstrates that the scope of the act is already limited. DC Vans rejects the contention that it induced plaintiffs to forego bringing an administrative grievance before the Tennessee Motor Vehicles Commission. Finally, DC Vans argues that plaintiffs' reliance on this statute is misplaced because it is designed to protect retailers who hold excess inventory and there is no allegation that FOK is holding excess inventory of Sprinter vans.

After consideration of the statutes and authorities cited, the Court agrees with DC Vans. Although the Sprinter van may have "industrial uses," it is not "industrial equipment" within the meaning of "inventory" as defined by Tenn.Code Ann. § 47–25–1301. There is no authority from any Tennessee court interpreting the statute in such a broad manner and this Court is disinclined to make such an expansive in-

terpretation of state law. Moreover, a van is a motor vehicle and subject to the regulatory scheme administered by the Tennessee Motor Vehicles Commission. To allow plaintiffs to proceed under either statute would indeed circumvent the legislative intent. These claims will therefore be dismissed.

### J. Count X—Enforcement of the Agreements as Modified

Count X asserts a claim for enforcement of the agreements as modified against DC Vans and FLLC as follows:

> The Defendants, either jointly and in concert with each other, or as agents of one another, or individually, by their respective individual actions, modified the terms of the *Dealer Agreement* and/or modified the terms of the *Release* by their statements, in writing and orally, as respectively alleged, after the July 18, 2002 announcement that the Sprinter van would be sold under the Dodge brand and by Dodge dealers.
>
> \* \* \* \* \* \*
>
> The *Dealer Agreement* and/or the *Release* have been modified by these statements and FOK is entitled to enforce the agreements as modified, to provide that its investment and costs in product will be recognized and that the Defendants will be treated fairly, as promised.

[Doc. 35 at ¶¶ 105, 108.]

DC Vans argues that both the Dealer Agreement and the Sprinter Release expressly state that they can only be modified through signed writings. Plaintiffs have not identified any writing signed by DC Vans that states it is an amendment to the Release or a modification to the Dealer Agreement. The only written document identified in Count X is the July 19, 2002 letter from FLLC which does not affect DC Vans's contractual rights and obligations. FLLC also presents similar arguments in favor of dismissing this claim.

Plaintiffs, however, have not responded to either argument.

■ As noted by both defendants, the Sprinter Release contains the following provision:

> This RELEASE may not be amended, modified or altered in any manner or to any extent except in a written instrument, expressly stating that it is an amendment to this RELEASE, duly executed by the party or parties to be charged with such amendment, modification or alteration.

[Doc. 35, Ex. A at ¶ 3.] Similarly, the Dealer Agreement provides in pertinent part: "Any modification or supplement to or extension of this Agreement, including any Annexes hereto, must be in writing and signed by authorized officers or representatives of both Parties, except as otherwise expressly provided herein." [Doc. 35, Ex. B at § 16.1(1).] Thus, the language of both documents unambiguously requires any modification to be in writing. Moreover, any reliance by plaintiffs on the July 19, 2002 letter from FLLC is misplaced because that letter does not even mention the Sprinter Release or the Dealer Agreement, and cannot therefore constitute an amendment or modification of those documents. Accordingly, plaintiffs have provided no reason for the Court to disregard the plain language of the agreements. This claim will also be dismissed.

### K. Count XI—Violation of Robinson–Patman Act

■ Count XI asserts a violation of the Robinson–Patman Act, 15 U.S.C. §§ 13(d) and (e), against DC Vans as follows:

> The aforesaid sale of Sprinter products to Dodge dealerships within FOK's area of responsibility with an incentive package where none is offered to FOK is a discriminatory sale within the meaning of 15 U.S.C. § 13(d) and (e), in that the

effect of the sale of the same product on these different terms is to affect the price of the Dodge Sprinter van to the Dodge dealership by increasing the profitability of that dealership while denying FOK the same equivalent ability to recover a profit based on sales of Sprinter vans. The net effect of the competitive advantages given to Dodge dealers by DC Vans ultimately allows such dealers to undercut the price which FOK can reasonably charge customers for the same product. Said actions and discriminatory pricing violates 15 U.S.C. § 13(d) and (e).

[Doc. 35 at ¶ 121.]

DC Vans argues that plaintiffs have failed to set out a legally sufficient claim because the Sixth Circuit has held that §§ 13(d) and (e) are limited to "promotional services" involving end customers, *i.e.*, the customers that purchase Sprinter vans for their own use. Thus, DC Vans contends that offering Dodge dealers access to a Dodge product line that was not offered to FOK does not constitute a proper claim under §§ 13(d) and (e).

In response, plaintiffs argue that DC Vans made available to the preferred group of Dodge dealers certain highly profitable and highly demanded Dodge trucks based on the group's sales of Sprinter vans. This same preference was not offered to FOK, who was a vendor of the same vans. Plaintiffs therefore argue that this enabled the preferred dealers to sell at a much lower price than the non-favored group of dealers such as FOK. Plaintiffs allege that they have shown a per se violation of § 13(a), which prohibits a seller from discriminating in price, because the Dodge Sprinter dealers received greater incentives than those offered to Freightliner Sprinter dealers resulting in plaintiffs paying a higher effective price for the vehicles.

In reply, DC Vans reiterates that §§ 13(d) and (e) are limited to promotional services involving end users. Thus, plaintiffs' allegation regarding the improper allocation of Dodge trucks to Dodge dealers is irrelevant to a claim under §§ 13(d) and (e).

The Court has carefully reviewed the briefs on this issue as well as the authorities cited therein. In their response brief, plaintiffs claim to have stated a violation of § 13(a) of the Robinson–Patman Act. However, the Amended Complaint sets forth only violations of §§ 13(d) and (e), a distinction that is quite material to the application and analysis of the claim. Thus, the Court will consider whether plaintiffs have stated a claim for violations of §§ 13(d) and (e) as alleged in the Amended Complaint.

 As discussed in *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983), relied on by DC Vans, "[s]ection 2(d) [§ 13(d)] prohibits a seller from making payments to one customer for services or facilities furnished by the customer, unless such payments are available to all purchasers on an equally proportional basis." *Id.* at 1327. "Section 2(e) [§ 13(e)] prohibits the seller from furnishing services or facilities connected with the process and handling of commodities upon all terms not accorded to all purchasers on a proportionally equal basis." *Id.* The aim of both sections is to eliminate devices by which preferred buyers obtain discriminatory preferences under the guise of promotional allowances. *Id.* However, the discriminatory practices prohibited in §§ 13(d) and (e) "must occur in connection with commodities obtained by the purchaser for *resale.*" *Id.* at 1328 (emphasis in original). Thus, in *Bouldis,* the Sixth Circuit held that the extension of credit by a motorcycle manufacturer to a dealer was "beyond the scope of" §§ 13(d) or (e) be-

cause it was incident to the original sale rather than to the subsequent resale of the product. *Id.*

In applying these principles to the present case, the Court is constrained to agree with DC Vans. Even assuming the facts as alleged are true, any alleged competitive advantages given to Dodge dealers as opposed to FOK are incidental to the original sale rather than to the subsequent resale of the product to the end users. Hence, plaintiffs cannot state a claim for violation of §§ 13(d) and (e) of the Robinson–Patman Act and this claim will be dismissed.

## V. Conclusion

For the reasons set forth above, plaintiffs' motion to strike [Doc. 44] is **DENIED**, DC Vans's motion to dismiss [Doc. 36] is **GRANTED,** and FLLC's motion to dismiss [Doc. 39] is GRANTED. Judgment will be entered accordingly and this case will be **DISMISSED with prejudice.**

### *JUDGMENT ON DECISION BY THE COURT*

This action came before the Court for hearing, Honorable Thomas A. Varlan, United States District Judge, presiding, and the issues have been heard and a decision having been rendered by the accompanying Memorandum Opinion,

It is **ORDERED and ADJUDGED** that the plaintiffs' claims be **DISMISSED WITH PREJUDICE** and that the defendants recover of the plaintiffs their costs of action.